304 A.2d 350.

IN RE: BERTRAM H. BUXTON, JR.

MAY 8, 1973.

PRESENT: Roberts, C. J., Paolino, Powers and Kelleher, JJ.

KELLEHER, J. The petitioner in this certiorari proceeding is a physician and the chief of staff of the Providence Lying-In Hospital. He seeks a reversal of a Superior Court justice's denial of his motion to quash or stay a subpoena ordering him to appear and testify before a grand jury sitting in Providence. The subpoena, he believes, is the result of newspaper articles describing procedures that have been practiced at Lying-In and which may have violated various portions of G. L. 1956 (1969 Reenactment) ch. 3 of title 11, the state's repository of its anti-abortion statutes.

We issued the writ on February 10, 1972. Since that time, the Attorney General has made no effort to have petitioner appear before the grand jury. On January 22, 1973, the United States Supreme Court ruled that Georgia's and Texas's anti-abortion statutes were unconstitutional. *Doe* v. *Bolton*, 410 U. S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); *Roe* v. *Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). A short time later, a three-judge panel sitting in the United States Court for the District of Rhode Island relied on the holdings of *Doe* and *Roe* and invalidated ch. 3 of title 11. *Women of Rhode Island* v. *Israel* and *Rhode Island Abortion Counseling Service* v. *Israel*, C.A. Nos. 4605 and 4586, filed February 7, 1973. Thereafter, petitioner asked that we, in the light of the action taken by our federal brethren, deny this petition as being "moot." We denied his motion.

The constitutionality of ch. 3 of title 11 is not in issue in the case at bar. Doctor Buxton's petition presents two simple questions. They are: (1) can a person ignore a summons to appear before a grand jury simply because he thinks the statute which proscribes the activities about which he may be asked to testify is unconstitutional; and (2) was the Superior Court's denial of petitioner's motion such an abuse of discretion as would justify a reversal of the order now being reviewed? The answer to both queries is negative.

Several years ago, five of our predecessors advised the then Governor that they believed the grand jury envisioned by our state's constitution was a common-law grand jury whose powers were "indeed broad" and whose inquiries were not limited to matters presented by the prosecutor or the instructions of the court; that the grand jury was a shield which would protect an accused from governmental oppression; and that the jurors could investigate and act upon such matters as might come before them because of either their observations or evidence presented to them. *Opinion to the Governor*, 62 R. I. 200, 4 A.2d 487 (1939). This court endorses the sentiments expressed by our predecessors in 1939. Later, it was emphasized that a grand jury is an appendage of the court and subject to its supervision. *State v. Edwards*, 89 R. I. 378, 153 A.2d 153 (1959).

Recently, the United States Supreme Court has reaffirmed the historically grounded obligation of a citizen to appear and give his evidence before the grand jury. Such a duty, the Court has said, while "onerous," is necessary to the administration of justice. A grand jury subpoena is not to be regarded as some magical document that dissolves all constitutional protections. Grand juries are subject to judicial control and upon a proper showing their subpoenas can be quashed. *United States v. Dionisio*, 410 U. S. 1,

93 S.Ct. 764, 35 L.Ed.2d 67 (1973); *Branzburg* v. *Hayes,* 408 U. S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972).

While our predecessors in their 1939 advice to the Governor observed that a grand jury could not "investigate and act" upon mere "rumor or reports," these remarks must be placed in proper perspective. Usually, the identity of an offender and the precise nature of the offense, if there be one, is developed at the conclusion of the grand jury's labors, not at the beginning. *Hendricks* v. *United States,* 223 U. S. 178, 32 S.Ct. 313, 56 L.Ed. 394 (1912). In its efforts to conduct a meaningful inquiry, a grand jury can explore an anonymous charge or rumor to the end that its truth or falsity can be established. *In re Addonizio,* 53 N. J. 107, 248 A.2d 531 (1968). Evidence obtained from such a source can serve as the basis of an indictment.

We have stated on countless occasions that a statute enjoys a presumption of constitutionality unless it is shown to be unconstitutional beyond a reasonable doubt. At the time the subpoena was served upon petitioner, our state's statutory enactments relating to abortion were in full force and effect. They were entitled to be regarded as presumptively constitutional. The petitioner's thoughts as to the Supreme Court's future course of action in this area gave him no excuse to ignore the subpoena. In fact, at this juncture no one knows the proposed thrust and purpose of the jury's inquiry.

On the record before us, we can do no more than repeat here what was said in *In re Pappas,* 358 Mass. 604, 266 N.E.2d 297 (1971), *aff'd* 408 U. S. 665, 672, 92 S.Ct. 2646, 2651, 33 L.Ed.2d 626, 634 (1972): (1) a grand jury, in order to carry out its ancient and important public function, must be allowed an appropriate scope of investigation; (2) all citizens having relevant knowledge have a duty to assist in such inquiries when called upon to do so; (3) the burden rests upon a witness asserting the impropriety of a grand

484

jury inquiry to establish the impropriety or oppressiveness of the inquiry; (4) the justice in charge of the grand jury may take into account all pertinent circumstances affecting the propriety, purposes and scope of the grand jury inquiry together with the pertinence of the witness' probable testimony to the investigation in progress.

In summary then, the ultimate decision as to what shall be investigated and which witnesses shall be called[1] rests with the grand jury; but it is the court, not the grand jury, that decides whether a witness must answer specific questions asked of him by the grand jury. *See Bursey* v. *United States,* 466 F.2d 1059 (9th Cir. 1972). There is absolutely nothing before us which would warrant, at this stage of the proceedings, the petitioner's invocation of any constitutional, common-law, or statutory privilege. *United States* v. *Bryan,* 339 U. S. 323, 70 S.Ct. 724, 94 L.Ed. 884 (1950). The denial of his motion to quash the witness subpoena was correct.

The petition for certiorari is denied and dismissed.

Mr. Justice Joslin and Mr. Justice Doris did not participate.

Mr. Justice Powers participated in the decision but retired prior to its announcement.

*Tillinghast, Collins & Graham, Edwin H. Hastings, Gunning, LaFazia, Gnys & Selya, Bruce M. Selya, Guy J. Wells,* for petitioner.

*Richard J. Israel,* Attorney General, *Alexander G. Teitz,* Assistant Attorney General, for State of Rhode Island.

---

[1]In *Taglianetti* v. *Fontaine,* 105 R. I. 596, 253 A.2d 609 (1969), we alluded to the prosecutor's potential ability to control the deliberations of a grand jury. Nevertheless, from a constitutional point of view, the prosecutor in his dealings with the grand jury is to play the role of an adviser, not a dictator.