391 A.2d 117.

Dennis M. Lynch, *Public Safety Director v.* Theodore S. King *et al.*

AUGUST 30, 1978.

Present: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

BEVILACQUA, C.J. The mayor of Pawtucket, in his capacity as Public Safety Director, filed this petition for common law writ of certiorari seeking review of a decision of a hearing committee appointed pursuant to the Law Enforcement Officers' Bill of Rights, G.L. 1956 (1977 Reenactment) chapter 28.6 of title 42 (the Officers' Bill of Rights).[1] The committee comprised of one member appointed by the police chief, one member selected by the aggrieved officer, and a third member selected by the first two, imposed a 15-day suspension upon Patrolman Raymond J. Bardsley rather than dismissing him from the Pawtucket Police Department as the petitioner had recommended. The respondents are members of that committee.

As a result of the events occurring on the night of June 25-26, 1976, Chief Roy of the Pawtucket Police Department recommended to petitioner that Patrolman Bardsley be dismissed from the force. The petitioner reviewed the

---

[1]The Law Enforcement Officers' Bill of Rights, enacted in 1976, provides an exclusive remedy for permanently appointed law enforcement officers who are under investigation or subject to interrogation by a law enforcement agency for any reason which could lead to disciplinary action, demotion or dismissal. The statute delineates the procedural and substantive rights to which the officer is entitled including notice, a hearing at which he may present witnesses and cross-examine the witnesses produced by the agency, and the right to de novo review in the Superior Court.

charges lodged against Bardsley and accepted that recommendation. Bardsley, after notification of the dismissal, was afforded a hearing pursuant to §42-28.6-4. Hearings were held on July 26, 28, and August 3, 1976.

At the hearing, Bardsley testified that as a result of information received from an undisclosed source, he attended a party in Providence on June 25, 1976, hoping to secure information regarding an alleged narcotics dealer. He stated that he intended to relate any information obtained to Providence and Pawtucket authorities. He did not, however, inform either the Pawtucket or the Providence Police Department of his plan.

Bardsley stated that while at the party, he was asked by a friend, David Johnson, to intervene when a person later identified as Mark Caracciolo began to create trouble. The officer testified that as he approached Caracciolo, the latter reached with his right hand, leaned forward, and stated that if Bardsley did not get away he was going to get hurt. At this point the officer testified that he grabbed Caracciolo, took out his off-duty revolver and warned Caracciolo not to "go for anything." He searched Caracciolo for weapons and finding none, released him. Bardsley stated that shortly thereafter, he was assaulted by several of Caracciolo's friends who screamed, "Get him, he's a cop!" Bardsley ran into the bathroom, exited through a window, and continued running until he injured his ankle. He then asked a bystander to call the Providence Police.

Caracciolo testified that although he and David Johnson had engaged in some beer throwing at the party, both he and Johnson shook hands in front of Bardsley to demonstrate that there was no problem between them. Caracciolo testified that it was Bardsley, not himself, who wanted to fight. He stated that Bardsley threatened to shoot him, then pulled his revolver and placed it in front of Caracciolo's mouth. Caracciolo said that he feared Bardsley would shoot him.

At the hearing, Johnson corroborated Bardsley's version of

the incident up until the point at which the gun was drawn. Johnson stated that when the gun appeared, he left the room. However, Ronald Hatch, also a friend of the officer, testified that he came into the room when he heard someone shout, "Put the gun away." He stated that he saw several persons punch and kick Bardsley. Some evidence was also introduced at the hearing which indicated that the gun which Bardsley drew was not registered with the Bureau of Identification as required by police regulations.

On the basis of the evidence before it, the hearing committee concluded that Bardsley had exercised poor judgment in drawing his gun since there was no evidence that Caracciolo was carrying a weapon. The committee, however, also found that the evidence presented was insufficient to prove beyond a reasonable doubt that Bardsley had not registered his weapon and that any disrepute cast on the Pawtucket Police Department by media publicity surrounding the incident could be remedied by publicizing the results of the hearing. It therefore ordered a 15-day suspension. The petitioner seeks review of this decision.

The petition raises the following issues: (1) whether certiorari is the proper avenue of review, (2) whether petitioner may challenge the constitutionality of the Officers' Bill of Rights having failed to raise that claim before the hearing committee, (3) whether the Officers' Bill of Rights violates the doctrine of separation of powers and the provisions of the twenty-eighth amendment of the Rhode Island Constitution, and (4) whether the hearing committee exceeded its authority by substituting its judgment for that of the Director of Public Safety.

I

At the threshold, we address the issue of whether petitioner is properly before this court. It is undisputed that petitioner is a party sufficiently aggrieved by the committee's decision to have standing to seek review of that decision. Also undisputed is the fact that the hearing committee is not a

state agency within the meaning of the Administrative Procedures Act, chapter 35 of title 42, and, therefore, is not bound by the appellate procedure provided therein.

The respondent contends that the proper vehicle for review of a decision by the hearing committee is appeal to the Superior Court pursuant to §42-28.6-12 which provides that "[a]ppeal from all decisions rendered shall be to the superior court in accordance with §45-20-1.1." Section 45-20-1.1 states in pertinent part: "Any *policeman or policemen* * * * aggrieved by an decision of the bureau of police * * * may appeal * * * to the superior court * * * [and] shall be entitled to a trial de novo before a justice of the superior court without a jury." (Emphasis added.) *See Weeks* v. *Personnel Board of Review*, 118 R.I. 243, 373 A.2d 176 (1977).

We have said that the words in a statute will be given their ordinary and customary meaning in the absence of a clear legislative intendment to the contrary. *Blais* v. *Franklin*, 31 R.I. 95, 106, 77 A. 172, 177 (1910). The language of §45-20-1.1 is clear. Therefore, the right of appeal provided in §42-28.6-12 attaches only when "any policeman" is aggrieved by the decision of the hearing committee and not otherwise. Section 42-28.6-12 is silent regarding the appellate rights of a municipality. However, the fact that the statute fails to specify the avenue of appeal does not mean that the municipality may not challenge the decision. Article XII of amendments to our state constitution specifically reserves to this court the power to exercise "final revisory and appellate jurisdiction upon all questions of law and equity." *Simmons* v. *Town Council*, 112 R.I. 522, 524, 312 A.2d 725, 726-27 (1973). Review is discretionary and generally accomplished by way of the common law writ of certiorari. *Eastern Scrap Services, Inc.* v. *Harty*, 115 R.I. 260, 262, 341 A.2d 718, 719 (1975); *City of Providence* v. *Local 799, International Association of Firefighters*, 111 R.I. 586, 589, 305 A.2d 93, 95 (1973). The writ in this case issued on December 2, 1976. The case is therefore properly before us.

## II

The petitioner challenges the constitutionality of the Officers' Bill of Rights on two bases — illegal delegation of executive power and violation of the twenty-eighth amendment of our state constitution. The respondent contends that, because petitioner failed to raise these issues before the hearing committee, he is barred from raising them for the first time on appeal. The respondent also contends that because petitioner chose to proceed under the Officers' Bill of Rights, he cannot now challenge its validity.

A petition for writ of certiorari brings up the record of the lower tribunal for review of errors of law. *Providence Journal Co.* v. *Mason,* 116 R.I. 614, 620, 359 A.2d 682, 685 (1976); *Henry* v. *Thomas,* 100 R.I. 564, 568, 217 A.2d 668, 671 (1966). It is well settled that, generally, this court will not review matters outside the record in a certiorari proceeding. *Vigneau* v. *La Salle,* 111 R.I. 179, 181, 300 A.2d 477, 479 (1973); *Ravenelle* v. *City of Woonsocket,* 73 R.I. 270, 275, 54 A.2d 376, 379 (1947). However, an exception to this rule has developed in unusual situations involving the public interest. *Rice* v. *Town Council,* 35 R.I. 117, 120, 85 A. 553, 554 (1912); *see Henry* v. *Thomas,* 100 R.I. 564, 568, 217 A.2d 668, 671 (1966); *Costello* v. *Probate Court,* 98 R.I. 420, 424, 204 A.2d 307, 309 (1964). We believe that, because the police act to protect persons and property and to ensure the public safety, the case at bar presents such an exception. Surely the public has an interest in the validity of the mechanism whereby allegations of improper conduct by police officers are adjudicated.

Additionally, we are aware that a constitutional challenge to the Officers' Bill of Rights below would have been futile because the hearing committee is not empowered to address constitutional questions. *See Bowen* v. *Hackett,* 361 F. Supp. 854, 860 (D.R.I. 1973)

As to respondent's contention that petitioner, having chosen to proceed under the Officers' Bill of Rights, is now barred

from attacking its constitutionality, we note that this court has generally applied the principle of estoppel in those situations in which the party seeking to challenge the constitutionality of a statute was within the class of persons benefited or protected by the statute. *See Russell* v. *Zoning Board of Review*, 100 R.I. 728, 731, 219 A.2d 475, 476-77 (1966); *De-Prete* v. *Farm Bureau Mutual Automobile Insurance Co.*, 83 R.I. 10, 12, 111 A.2d 837, 838 (1955); *Sweck* v. *Zoning Board of Review*, 77 R.I. 8, 10-11, 72 A.2d 679, 680 (1950). The Director of Public Safety is clearly not a member of the class benefited or protected by the statute at issue. The Officers' Bill of Rights was designed to protect the rights of policemen threatened with disciplinary action.

Therefore, we conclude that the Director of Public Safety may raise the constitutionality of the statute in his petition for certiorari.

### III

It is well established that a legislative enactment is presumed to be constitutional in form and application until proven otherwise beyond a reasonable doubt. *State* v. *Capone*, 115 R.I. 426, 432, 347 A.2d 615, 619 (1975); *In re Buxton*, 111 R.I. 480, 483, 304 A.2d 350, 352 (1973). This court will attach "every reasonable intendment in favor of * * * constitutionality" in order to preserve the statute. *Prata Undertaking Co.* v. *State Board of Embalming and Funeral Directing*, 55 R.I. 454, 461, 182 A. 808, 811 (1936); *see Baffoni* v. *State*, 118 R.I. 226, 233, 373 A.2d 184, 188 (1977). The burden of establishing the unconstitutionality of a statute rests with the challenger. *Malinou* v. *Board of Elections*, 108 R.I. 20, 25, 271 A.2d 798, 800 (1970).

The petitioner first contends that the Officers' Bill of Rights violates the constitutional doctrine of separation of powers by legislatively delegating an executive function, enforcement of the law, to an administrative body. This argument is without merit.

This court has consistently upheld the power of the General Assembly to enact laws to suppress crime, to preserve peace and good order and to protect the rights of persons and property. *Marro* v. *General Treasurer*, 108 R.I. 192, 196-97, 273 A.2d 660, 662 (1971); *City of Newport* v. *Horton*, 22 R.I. 196, 208, 47 A. 312, 316 (1900). In a long line of decisions, we have sustained the right of the General Assembly to control the police as an incident of that power. *See, e.g., Weeks* v. *Personnel Board of Review*, 118 R.I. 243, 246, 373 A.2d 176, 177 (1977); *Marro* v. *General Treasurer* and *City of Newport* v. *Horton*, both *supra*. We have also recognized that, to accomplish the purpose of an enactment, the Legislature may vest administrative bodies or officers with some portion of this legislative power where the delegation is accompanied by standards sufficient to guide that body in the exercise of the power delegated. *City of Warwick* v. *Warwick Regular Firemen's Association*, 106 R.I. 109, 112-13, 256 A.2d 206, 209 (1969). The petitioner in this case does not assert that the Officers' Bill of Rights lacks sufficient standards to guide the hearing committee in the exercise of its authority. We, therefore, conclude that, the statute does not violate the doctrine of separation of powers.

The petitioner also asserts that the Officers' Bill of Rights unconstitutionally infringes upon the right of self-government in all local matters reserved to the cities and towns by R.I. Const. amend. XXVIII, the home rule amendment. Traditionally, cities and towns were held to be creatures of the Legislature having no inherent right to self-government but deriving all of their authority and power from the Legislature. *City of Providence* v. *Moulton*, 52 R.I. 236, 246, 160 A. 75, 79 (1932). The home rule amendment altered this traditional view by empowering cities and towns to legislate with regard to all local matters. R.I. Const. amend. XXVIII, §1. However, enactment of that amendment in no way affected the sovereignty of the state with regard to the exercise of the police power since police officers, while they may be appointed by the individual city or town, act for all the

inhabitants of the state and not only for the residents of the appointing community. *Marro* v. *General Treasurer*, 108 R.I. 192, 196, 273 A.2d 660, 662 (1971); *State* v. *Krzak*, 97 R.I. 156, 162, 196 A.2d 417, 421 (1964).

Additionally, the power to legislate in local matters conferred upon municipalities by the home rule amendment is not unlimited. The Legislature clearly reserved to itself:

> "the power to act in relation to the property, affairs and government of any city or town by general laws which shall apply alike to all cities and towns, but which shall not affect the form of government of any city or town." R.I. Const. amend. XXVIII, §4.

The Officers' Bill of Rights is clearly an act which applies to all cities and towns and which does not affect the form of government.

For the foregoing reasons, we conclude that the Law Enforcement Officers' Bill of Rights is constitutional. Questions as to the wisdom of the enactment may arise. These, however, must be addressed to the Legislature and not to the courts.

## IV

In the alternative, petitioner contends that the hearing committee exceeded its authority by substituting its judgment for that of the Director of Public Safety. While §42-28.6-13 does allow for summary action by the director in some cases, it is clear that the Officers' Bill of Rights contemplates that the proceeding conducted by the hearing committee will be the initial adjudication of the charges lodged against the officer and that the prehearing determination regarding punitive measures made by the charging authority is merely a recommendation. Section 42-28.6-4 provides:

> "If the investigation or interrogation of a law enforcement officer results in the *recommendation* of some action, such as demotion, transfer, dismissal, loss of

pay, reassignment, or similar action which would be considered a punitive measure, then, before taking such action, the law enforcement agency shall give notice to the law enforcement officer that he is entitled to a hearing on the issues by a hearing committee * * *." (Emphasis added.)

The Officers' Bill of Rights also authorizes the committee to subpoena witnesses, administer oaths, make findings of fact and, finally, to "sustain, modify in whole or in part or reverse the complaint or charges of the investigating authority * * *." Section 42-28.6-11. Clearly, then, the Legislature endowed the hearing committee with broad powers to investigate allegations of police misconduct and did not intend that the committe be bound in any way by the recommendation of the charging authority. We conclude, therefore, that the committee acted within the scope of its authority in determining that a 15-day suspension was an appropriate disciplinary measure.

V

By order of the court, the town of Coventry was permitted to file an amicus brief in this proceeding. The town raised several issues not cited by petitioner. Our review on certiorari is limited to questions raised by the petitioner. *Providence Journal Co.* v. *Mason,* 116 R.I. 614, 620, 359 A.2d 682, 685 (1976). Therefore, this court will not consider those grounds of invalidity urged by the town but not addressed by the parties.

The petition for certiorari is denied and dismissed, the writ previously issued is quashed and the records certified to this court are ordered returned to the hearing committee with our decision endorsed thereon.

*Moses Kando,* City Solicitor, *Arthur A. Thovmasian, Jr.,* Assistant Town Solicitor (for the Town of Coventry as Amicus Curiae), for petitioner.

*Hogan & Hogan, Thomas S. Hogan,* for respondents.