**In re Lieutenant John A. SIMONEAU.**

**No. 93–283–M.P.**

Supreme Court of Rhode Island.

Jan. 12, 1995.

Richard G. Riendeau, Asst. City Sol., Vincent F. Ragosta, Jr., Office of City Sol., Providence, for petitioner.

Joseph F. Penza, Jr., Olenn & Penza, Warwick, for respondent.

## OPINION

MURRAY, Justice.

This case comes before us on a petition for certiorari by the city of Providence (the city), which seeks review of the final decision of a hearing committee (committee) convened pursuant to the Law Enforcement Officers' Bill of Rights, G.L.1956 (1993 Reenactment) chapter 28.6 of title 42. The committee has ruled in favor of Lieutenant John A. Simoneau (respondent) of the Providence police department (the department), finding him not guilty of seven charges alleging insubordination, undermining the development and maintenance of proper professional attitudes in his subordinates, engaging in behavior counterproductive to the fostering of efficiency, discipline, and morale in his subordinates, conduct unbecoming an officer; and abuse of those under his command. For the reasons that follow, we quash the committee's decision.

The respondent is a veteran of over twelve years' service with the city's police department. The investigation into respondent's alleged misconduct was prompted by allegations made against respondent by Patrolwoman Rhonda Kessler (Kessler), currently a six-year veteran of the department. Kessler was assigned to the department's patrol bureau as a spare; Kessler did not hold a steady car-post assignment. Between May and October of 1990 Kessler attempted to secure a position in subdistrict 2 through a bidding process. The respondent, then a sergeant, was also assigned to subdistrict 2 in a supervisory capacity. In her first two

bids for a steady car-post assignment in subdistrict 2, Kessler was outbid by male officers with more seniority. Kessler believed that respondent recruited senior officers to outbid her for these positions. During the summer of 1990 Kessler communicated her concern to Major Edward Collins (Collins), the head of the department's uniform division, that respondent was discriminating against her because of her gender. Kessler asserted that she was prevented from obtaining a position in subdistrict 2 because respondent believed that there were too many women in the district. Collins ordered that Kessler's name be placed on the master post board for a position in subdistrict 2 as a spare. Kessler's name was removed and placed on the bottom of the board with the initials of both respondent and his brother, Dennis Simoneau, then a lieutenant in the department's patrol bureau. Collins again put Kessler's name in subdistrict 2 with his own initials to indicate that it was his order. Kessler submitted a third bid for a steady car-post assignment in subdistrict 2. This time she was the most senior officer submitting a bid. The respondent contacted Patrolman Daniel Salzillo (Salzillo), who was out of work as a result of a disability, to submit a bid for the post. Salzillo was senior in rank to Kessler. Collins requested that Salzillo withdraw his bid so that Kessler would receive the assignment. Salzillo withdrew his bid but later resubmitted it. Collins intervened and awarded the car-post to Kessler even though she was junior to Salzillo.

Shortly thereafter at a roll call during October of 1990, respondent ordered the officers in subdistrict 2 to assemble prior to the commencement of their shift. Approximately five uniformed officers were present. The respondent read to the assembled officers the assignments and special notices. There was uncontroverted testimony by three offi-

cers present at the roll call that respondent engaged in an emotional tirade against his superior officers. He denigrated them for their interference in the Kessler car-post assignment, using extremely offensive language. According to the testimony of Patrolman Peter Mazzie (Mazzie), respondent became angry and red-faced when he began addressing the award of the car-post in subdistrict 2 to Kessler. The respondent said Collins and Chief Walter Clark "must be shitting in their fucking pants because of the situation that happened with the Mary Nunes incident."[1] Mazzie testified that respondent used the word "fuck" several times and, before concluding the roll call, said in reference to the Kessler car-post assignment, that this "is a nine inning ball game and only the first fucking inning." Patrolwoman Tabatha Glavin testified that every other word out of respondent's mouth was "fuck." The respondent called the entire administration "politicians and cowards" and said that they "are afraid that Rhonda Kessler was going to make this another fuckin' Mary Nunes caper." Patrolman John Carnevale stated that during the roll call, respondent said that he would "file a reverse discrimination suit against the Chief and Major Collins." Carnevale stated that respondent used the words "fuck," "fuckin'," and "asshole" during the roll call. The respondent declared that "Major [Collins] was trying to be a fuckin' diplomat or fuckin' politician and that if the Major hadn't changed * * * [the car-post assignment] that he himself was once again going to sue the City, sue the Chief and the Major."

A lengthy investigation into respondent's conduct was initiated in October of 1990 by the department's internal-affairs division. The investigation culminated in the seven charges against respondent.[2] The respon-

---

1. Mary Nunes was a female State Trooper who instituted a sex-discrimination lawsuit in the United States District Court for the District of Rhode Island against the State of Rhode Island and a number of superior officers in the Rhode Island State Police.

2. Charge 1 was an insubordination charge for remarks allegedly made during roll calls in October of 1990. Charge 2 was a violation of the responsibility for the development and mainte-

nance of proper professional attitudes of his subordinates relating to respondent's alleged behavior at roll calls in October of 1990. Charge 3 was a violation of the responsibility to foster efficiency, discipline, and morale in his subordinates also relating to the roll calls in October of 1990. Charge 4 alleged conduct unbecoming to an officer relating to the roll calls in October of 1990. Charge 5 alleged conduct unbecoming to an officer in relation to respondent's behavior

dent requested a hearing pursuant to the provisions of chapter 28.6 of title 42. A hearing committee, consisting of Lieutenant Mark O'Connor (O'Connor) of the Scituate police department, Captain James Wynne of the North Kingstown police department, and Detective Lieutenant Terry Crawley of the Providence police department, conducted its hearing over five days beginning on October 26, 1992, and ending on December 14, 1992. The committee heard testimony from approximately fifteen witnesses. On December 14, 1992, at the conclusion of the city's case in chief, before respondent presented his case, counsel for respondent made an oral motion for a directed verdict and/or judgment of acquittal. The committee took a short break before rendering its decision finding respondent not guilty of all charges. O'Connor delivered the decision of the committee and stated that "this panel unanimously · * * * find[s] Lieutenant John Simoneau not guilty of each and every charge brought against him. * * * This panel finds that there is not sufficient evidence beyond a reasonable doubt to find [him] guilty."

After announcing its decision, the committee requested from counsel three copies of the stenographic record of the hearing to assist it in constructing its findings of fact. In response, counsel for the city requested an opportunity to make a closing argument to the committee. O'Connor responded that "a closing argument is not going to change my mind in any way shape or form." Approximately five months later, the committee issued an oral decision on April 7, 1993, which was stenographically transcribed. The transcript of this oral decision was signed and certified on May 4, 1993, and subsequently delivered to the parties. In making its "findings of fact," the committee recited each charge, which was followed by pronouncements that insufficient evidence had been presented and findings of "not guilty." The committee did not cite any factual findings in its decision.

Section 42–28.6–12 of the Law Enforcement Officers' Bill of Rights provides in pertinent part:

"[T]he city or town may seek review of the final decision of the hearing committee by writ of certiorari to the supreme court on the grounds that the decision was arbitrary or capricious or characterized by abuse of discretion or affected by error of law."

On September 28, 1993, this court granted the city's petition for writ of certiorari.

"The Law Enforcement Officers' Bill of Rights, enacted in 1976, is the exclusive remedy for permanently appointed law-enforcement officers who are under investigation by a law-enforcement agency for any reason that could lead to disciplinary action, demotion, or dismissal. *Lynch v. King,* 120 R.I. 868, 870 n. 1, 391 A.2d 117, 119 n. 1 (1978). Endowed with broad powers of investigation by the General Assembly, the committee is not bound by the recommendations of the charging authority but may call witnesses, make findings of fact, and sustain, modify, or reverse the charges of the investigating authority. *Id.* at 878, 391 A.2d at 123. In our review of the committee's findings, we shall neither weigh the evidence nor make findings of fact; instead, we shall examine the extensive record to determine whether some competent evidence exists to support the committee's decision. *Lantini v. Daniels,* 104 R.I. 572, 574, 247 A.2d 298, 299 (1968); *Hooper v. Goldstein,* 104 R.I. 32, 43, 241 A.2d 809, 814–15 (1968)." *City of East Providence v. McLaughlin,* 593 A.2d 1345, 1348 (R.I.1991).

The city contends that the hearing committee exceeded its authority by failing to conduct the hearing according to the provisions of § 42–28.6–11(b). Specifically the city avers that the committee failed to make findings of fact. Section 42–28.6–11(b) provides in relevant part that "[a]ny decision, order, or action taken as a result of the hearing shall be in writing and shall be accompanied

directed toward Kessler. Charge 6 was a violation of respondent's responsibility to foster efficiency, discipline, and morale in his subordinates in relation to the alleged discriminatory behavior

against Kessler. Charge 7 alleged abuse by a superior officer also in relation to respondent's behavior toward Kessler.

by findings of fact. The findings shall consist of a concise statement upon each issue in the case."

We recently had occasion, in *Dionne v. Jalette*, 641 A.2d 744 (R.I.1994), to address the adequacy of a decision similar to the one now before us. The hearing committee's decision in that case contained no findings of fact but simply set out each charge verbatim, followed by the wording "guilty (or not guilty) by unanimous decision." In that case we clearly articulated that the hearing panel must, at a minimum, indicate the evidence upon which it relies in reaching its conclusions. We have stated that there are many fundamental reasons why such factfinding is necessary. We indicated that "[t]he reasons have to do with facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction." *Hooper v. Goldstein*, 104 R.I. 32, 44, 241 A.2d 809, 815 (1968) (quoting 2 Davis, *Administrative Law Treatise*, § 16.05 at 444).

 It is clear in this case that the committee did not follow the directives of the statute. The requirement that the hearing committee render its conclusions in the form of findings of fact is a mandate that demands compliance. The record before us shows complete noncompliance. In light of the foregoing discussion, the committee's decision cannot be upheld.

We note that the city also avers that the committee exceeded its authority in summarily dismissing the charges against respondent by granting his motions requesting a directed verdict and judgment of acquittal. We are in agreement with the city that the committee exceeded its authority in summarily dismissing the charges after the city presented its case.

If the committee intended to apply a standard analogous to that applied by a court on a motion for a judgment of acquittal, it did not articulate such a standard in the factual context of this case. Such a standard would require the tribunal to view the evidence in the light most favorable to the city and to draw all inferences consistent with guilt. The committee also misconceived the burden of proof in a disciplinary proceeding. Since this is a civil case, the burden of proof upon the city is a fair preponderance of the evidence, not proof beyond a reasonable doubt. Applying the appropriate standard to the evidence in this case would lead to the ineluctable conclusion that the committee's decision was irrational and arbitrary. We shall not discuss this argument because we sustain the city's appeal on the premise of the committee's noncompliance with the provisions of § 42–28.6–11(b).

For these reasons the petition for certiorari is granted. The decision appealed from is quashed. The case is remanded with directions to empanel a newly constituted committee for a hearing de novo.