DECISION
This case is before the Court on appeal from a decision of a hearing committee empaneled pursuant to the Law Enforcement Officers' Bill of Rights, G.L. 1956 (1988 Reenactment) §42-28.6-1 et seq. Jurisdiction is pursuant to § 42-28.6-12
(1995 Amendment).[1]
Facts and Travel
The matter arises out of actions taken by the Police Chief of the City of East Providence discharging Officer Michael Bodell (Bodell) from his position as Patrolman on the East Providence Police Department (E.P.P.D.). The facts leading up to the Chief's actions are essentially those found by the hearing committee and contained in, and supported by, the record.
Officer Bodell and three other members of the E.P.P.D. were involved in a vehicle chase and subsequent arrest of a suspect, Robert Silva (Silva) on March 18, 1991. The suspect was taken into custody and found to have suffered two broken legs some time during the incident. Officer Bodell and E.P.P.D. Officer David Cookson prepared police witness reports in connection with the incident. A third member of the force, Reserve Officer Stephen Durfee, was asked to complete an incident report. The suspect, Robert Silva, subsequently filed suit against the City of East Providence and the E.P.P.D., alleging police brutality and a violation of his civil rights. During pretrial discovery of the civil action, East Providence Police Officer Bruce Kidman, who was at the scene of the Silva arrest, came forward and revealed various inaccuracies and fabrications in official statements previously made by Officers Bodell, Cookson, and Durfee. Depositions revealed more evidence of fraudulent wrongdoing on the part of the officers. Special Officer Durfee was terminated for his part in the incident, and Officers' Bodell and Cookson were suspended pending the Law Enforcement Officers' Bill of Rights hearings. All were charged criminally.
A Law Enforcement Officers' Bill of Rights hearing was convened at Bodell's request after City Manager Paul Lemont had, at the Chief's request, notified Bodell of his impending discharge and of his right to such a hearing. The hearing committee, after fifteen hearing days and numerous witnesses, concluded that Officer Bodell had acted inappropriately during the arrest and had covered up improprieties in his official police report. The committee, in its final written decision, recommended that Officer Bodell be terminated immediately.
Officer Bodell now appeals that decision of the hearing committee, alleging a multitude of procedural violations, and asks this Court to void the decision of the committee.
The Law Enforcement Officers' Bill of Rights
Although not a state agency within the meaning or the Administrative Procedures Act (A.P.A.), R.I.G.L. 42-35-1 et seq.,
a hearing committee under the Officers' Bill of Rights statute possesses quasi-judicial authority similar to that exercised by state agencies under the A.P.A. In re Denisewich, 643 A.2d 1194
(R.I. 1994). The Law Enforcement Officers' Bill of Rights statute provides the exclusive remedy o permanently appointed law enforcement officers who are under investigation and subject to disciplinary action. City of East Providence v. McLaughlin,593 A.2d 1345, 1348 (R.I. 1991). An officer facing departmental charges may request a hearing before a hearing committee which then is empowered to sustain, modify, or reverse the complaint or charges of the investigating authority. § 42-28.6-11. The hearing panel is not bound by any prehearing recommendation of punitive measures made by the charging authority, but may take any action as is appropriate under the circumstances. Lynch v. King,120 R.I. 868, 391 A.2d 117 1978).
Standard of Review
The parties have stipulated to a review of the hearing committee's decision in accordance with the revised Law Enforcement Officers' Bill of Rights statute, § 42-28.6-1 et seq., (1995 Amendment) which operates in accordance with the appeal provisions of R.I.G.L. § 42-35-15. The statute sets forth the limitations on the scope of review permitted by this Court. Specifically, § 42-35-15(g) provides:
 The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The Court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decision are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing an agency's decision, this Court must not substitute its judgment for that of the agency with respect to the credibility of witnesses or the weight of the evidence. Costav. Registrar of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988). Rather, this Court must confine itself to a review of the record to determine if legally competent evidence exists to support the agency decision. If competent evidence exists in the record considered as a whole, the Court is required to uphold the agency's conclusions. Barrington School Committee v. Rhode IslandState Labor Relations Board, 608 A.2d 1126, 1138 (R.I. 1992). Legally competent evidence is defined as the presence of some or any evidence supporting the agency's findings. Sartor v. CoastalResources Management Council, 542 A.2d 1007, 1082-83 (R.I. 1988). The Court may reverse factual conclusions of an agency only when they are totally devoid of competent evidentiary support in the record. Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (R.I. 1981).
This Court will uphold an agency decision after reviewing the certified record and evidence, even where the Court may be inclined to view evidence differently than did the Agency, if the Agency's decision is supported by substantial evidence. Berberianv. Department of Employment Security, 414 A.2d 480, 482 (R.I. 1980); Cahoone v. Board of Review of Dept. of EmploymentSecurity, 104 R.I. 503, 506; 246 A.2d 213 215, (1968). "Substantial evidence is that which a reasonable mind might accept to support a conclusion, i.e., more than a scintilla of competent evidence. Newport Shipyard v. Rhode Island Commissionfor Human Rights, 484 A.2d 893 (R.I. 1984).
Composition of the Hearing Committee
Officer Bodell initially contends that the hearing committee violated its statutory authority in failing to properly compose a hearing panel in accordance with provisions of the statute, § 42-28.6-1. Specifically, Officer Bodell maintains that the committee which heard and deliberated his case was composed of five individuals rather than the three required. Under the statute, a hearing committee shall be composed of three active law enforcement officers: one selected by the Chief of the relevant law enforcement agency, one selected by the aggrieved officer, and the third selected by mutual assent of the first two. § 42-28.6-1. In the event that the two members are unable to agree, the Presiding Justice, upon application, will make the appointment of the third member. Id.
In the preliminary stages of composing the three-member hearing committee to which Officer Bodell would present his appeal of the departmental charges against him, a second hearing committee was also being composed, that which would hear the appeal or Officer David Cookson, another E.P.P.D. officer also facing charges as a result of the incident on March 18, 1991. Officer Bodell's designated candidate and the designated representative of the City of East Providence to the Bodell hearing panel, in conjunction with the representative of the City of East Providence to the Cookson panel and Officer Cookson's designated candidate, petitioned the Presiding Justice to appoint a third member to both of the hearing committees, as neither panel could agree on the third neutral panelist. Further, the two panels indicated in their petition to the Presiding Justice that, in the interest of expediting matters and to minimize expense to the officers and to the City, one individual could be appointed to serve as the Chair for both panels. (City's Exhibit 1.) Presiding Justice Rodgers named Detective Ralph Liguori, Esq. as Chairman of the Hearing Committee assigned to hear the Bodell matter and to the position of Chairman assigned to the Cookson Hearing Committee. The two three-member hearing committees, both chaired by this same individual appointed by the Presiding Justice, chose to conduct the Bodell and Cookson hearings together.
The two panels heard testimony over fifteen (15) hearing days, from July 20, 1994 to January 24, 1995. A decision on the Bodell matter was issued on March 10, 1995, signed by three individuals: Sergeant Geoffrey Rinn, Officer Bodell's appointment to the panel; Captain Joseph Broadmeadow, appointed as the delegate of the City of East Providence on the Bodell hearing panel; and Detective Ralph Liguori, appointed by the Presiding Justice. The transcript itself provides evidence that the two hearing panels carefully maintained panel integrity, i.e. by taking separate votes in the conduct of this complicated hearing. (See, Tr. 13, at 36, "Mr. Liguori: After a brief but thoughtful caucus, we voted in the Bodell matter two to one not to allow those questions, and in the Cookson matter, three, zip.") See also, Tr. 7, at 47; Tr. 14, at 105.) A review of the record indicates that the Bodell hearing panel was clearly composed of three individuals according to the requirements of the statute, and the decision of that three-member panel was also clearly issued by those same three individuals in full compliance with the statutory mandate.
Conduct of the Hearing
Officer Bodell further contends that the charges against him should have been dismissed by the hearing committee before the City had the opportunity to present any evidence whatsoever. The conduct of the Bill of Rights hearing is provided by statute, allowing that both the law enforcement agency and the officer shall be given ample opportunity to present evidence and argument with respect to the issues involved. § 42-28.6-5. The Rhode Island Supreme Court has recently held that the hearing panel has the statutory authority to sustain, modify or reverse charges brought against the officer by the city, but the panel has no authority to dismiss the charges. In re Lieutenant John A. Simoneau,
652 A.2d 459 [652 A.2d 457] (R.I. 1995). In Simoneau, where the panel had heard some testimony and rendered a decision dismissing the charges against the Officer without allowing the city to complete the presentation of their evidence, the summary dismissal of the charges was found to be in excess of that authority granted under the statute. Id.
Officer Bodell maintains that the hearing committee should have dismissed the charges brought against him by the Chief of Police, offering a variety of reasons to justify the demand. Because the specific authority of the statute does not allow for such action, and because the statute clearly requires the panel to allow both sides opportunity to present evidence, the panel had no statutory authority to dismiss any of the charges on any grounds.
Counsel additionally argues that Officer Bodell has been deprived of his due process rights throughout the entire hearing process. Citing Cleveland Board of Education v. Loudermill,
(470 U.S. 532, 105 S.Ct. 1487 (1985)), counsel provides a very clear illustration of exactly what process is due under this circumstance:
 An essential principle of due process is that deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." Mullane v. Central Hanover Bank Trust Co., 339 U.S. 306, 313, 70 S.Ct 652, 656, 94 L.Ed. 865 (1950). We have described the root requirement of the Due Process Clause as being "that an individual be given an opportunity for a hearing before he is derived of any significant property interest". Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed. 113 (1971) (emphasis in original).
Similarly, the Rhode Island Supreme Court has recognized that the foundation of due process rests on an opportunity to be heard in a meaningful manner at a meaningful time. Leone v. Town of NewShoreham, 534 A.2d 871 (R.I. 1984).
The record is replete with evidence which indicates that Officer Bodell has been given every possible process due under the Bill of Rights statute, the R.I. Constitution and the U.S. Constitution. As of July 10, 1992, the date of his emergency suspension, Officer Bodell had not been deprived of any liberty or property interest, nor had any such deprivation been suggested, either by the Police Chief or the City Manager. The notice of suspension which he had received at that time states:
 Please be advised that as Chief of Police and acting under the Policeman's Bill of Rights, Rhode Island State Law 42-28.6-13-C (sic) Emergency Suspension, you are hereby suspended from duty for an indefinite period of time. You will receive all ordinary pay and benefits during this time. You will be afforded a hearing before a Hearing Committee within 14 days if you so request. s/Carl A. Winquist, Chief of Police.
While not on active duty, he remained at full pay, receiving ordinary benefits as required by statute and evidenced clearly in the record.
On July 29, 1992, Stephen Linder, Esq., then representing Officer Bodell as a result of the emergency suspension, indicated to Chief Winquist that both he and the officer were aware that the "suspension arose out of an incident that is alleged to have occurred on March 18, 1991 involving Robert M. Silva." (See, Memorandum of Appellee, Attachment 11). Having engaged counsel in this fashion, Officer Bodell cannot claim that he had no notice of the basis for his emergency suspension. The officer remained in the employ of the Police Department of the City of East Providence and continued to receive his pay.
On June 14, 1993, in a proceeding held at the East Providence Police Department headquarters, and attended by Officer Bodell, Stephen Linder, Esq., as counsel for Officer Bodell, Major Gary Dias and Officer Alan Gouviea of the E.P.P.D., and Michael McEntee, Esq., as counsel for the City, Officer Bodell was given a Notice of Investigation accompanied by a sworn complaint and a Details of Occurrence Report signed by Chief Winquist. (East Providence Exhibits 5 and 6, Bodell Exhibit 3.) Officer Bodell was thereby put on notice of departmental charges pending against him as of this date. He continued to receive his ordinary pay and remained in the employ of the City of East Providence on suspension. No discipline of any kind was recommended in this very brief proceeding.
When City Manager Lemont notified Officer Bodell on June 18, 1993, of the intent to terminate his employment with the E.P.P.D., a discipline recommended by the Chief of Police, Officer Bodell's right to a hearing as provided under the Law Enforcement Officers' Bill of Rights attached. This notification signified an intent to act in a manner imposing discipline, as required by the statute to trigger the right to a hearing and the notice provisions thereof. In response, Officer Bodell notified Chief Winquist on June 25, 1993 that he would be challenging the termination in accordance with the statute, once again asserting his knowledge and notice of the charges and his right to a hearing. Officer Bodell plainly had notice as to the reasons behind his suspension; had notice as to his right to a hearing under the statute; had notice as to the charges pending against him by the City; and had notice of the recommendation of dismissal by the Chief of Police. As Officer Bodell had every notice required by due process, the committee's hearing process was not in violation of constitutional provisions.
Additionally, Officer Bodell had every opportunity to present evidence to the Hearing Committee, to examine witnesses and to hear testimony offered against him during the hearings. The hearings were plainly arranged to allow the officer the opportunity to be heard in a meaningful way at a meaningful time. The record itself and the various documents submitted on appeal[2] provide clear evidence that the hearings gave Officer Bodell ample opportunity to present evidence. It is equally clear that all notice provisions of the statute and those required by constitutional due process have also been fully afforded the officer in this matter.
Decision of the Hearing Committee
The hearing committee is empowered to sustain, modify in whole or in part, or reverse the complaint or charges of the investigating authority. § 42-28.6-11(a). The committee is not bound by the recommendations of the charging authority, but may call witnesses, make findings of fact, and render a decision.East Providence v. McLaughlin, 593 A.2d 1345 (R.I. 1991). Taking into account the fifteen days of testimony, the multitude of witnesses, and the volume of exhibits, the hearing committee found substantial, competent evidence to support the charges brought by the City of East Providence and the Police Chief. As such, the decision in writing, rendered by the panel properly composed under the statute, supported by a concise statement of fact as to each finding, sustaining the charges of the Chief of Police, and supported by substantial evidence of record, must be upheld.
The first charge brought by the City of East Providence against Officer Bodell is for failure to promptly and accurately submit all reports and forms as required" under the E.P.P.D. Rules and Regulations (Rules and Regulations), Section I, sub F, part 4. The panel unanimously concluded;
. . . through Bodell's own testimony that he knowingly submitted a false report. According to Bodell, he was concerned about the damage to Silva's vehicle and the cruiser, as a result he fabricated events and reported them in his witness statement. (Sic). Decision of the Hearing Committee, p. 6.
The panel found substantial evidence throughout Officer Bodell's testimony that he knowingly submitted a false report regarding the chase and arrest of Robert Silva on March 18, 1991:
 Ms. Holland: Now, you have had an opportunity to review your witness statement?
 Officer Bodell: Yes.
 Ms. Holland: Does your witness statement as prepared on or about March 18, 1991 contain any inaccuracies?
 Officer Bodell: Yes.
 (Transcript 11 at page 123.) (See, also, Tr. 11 at 129; Tr. 12 at 106; Tr. 12 at 12.)
Bodell admitted his concern regarding the damage to Silva's vehicle and to the police cruiser and what the consequences might be to himself personal as a result of property damage.
 Mr. Liguori: You testified that at the time you completed your witness statement shortly after the incident, at least at the time you primarily were not concerned the Officer Cookson, but rather with yourself and any consequences of your actions, is that correct?
 Officer Bodell: I guess that's a fair assumption. I was concerned about the way the events had taken place because of the type of incident it turned out to be.
 Mr. Liguori: And you were concerned, as a matter of fact, your attorney described them as the overriding concerns were the broken windows Mr. Silva's vehicle? (sic)
 Officer Bodell: Yes.
 (Transcript 12 at 96.) (See, also, Tr. 12 at 105.)
Regarding the second charge, a violation of the Rules and Regulations Section I, sub F, part 7, requiring that "an officer shall speak the truth at all times and under all circumstances," the panel found substantial, credible evidence that Officer Bodell violated this regulation in failing to verbally report the true facts of the Silva incident on two occasions. The panel found Major Dias's testimony credible regarding the conversation he and Officer Bodell had at the Police Station, the day after Officer Bodell had submitted what turned out to be the inaccurate written witness statement. Major Dias testified that Officer Bodell told him that the incident had occurred just as he had written in his police witness statement. (Tr. 3 at 49). The hearing panel's finding is supported by the record.
The panel also found evidence to support the third charge, withholding evidence, a violation of E.P.P.D. Rules and Regulations Section I, sub G, part 25, which requires that a member of the force will not fabricate, withhold or destroy any evidence of any kind. Officer Bodell testified that the report he had submitted was not entirely truthful and that he withheld information which was pertinent to the incident:
 Officer Bodell: The events happened. As I said, they're not enumerated with the extra detail or you know, that's a brief summary. It's not a specific account of every step that took place for those few seconds. (Tr. 12 at 12.)
The officer also admitted that his written report contained no mention of the use of a flashlight which was used as a weapon, to break the windows in the suspect's vehicle and to strike Mr. Silva about the legs:
 Mr. Ragosta: [A]nd you chose not to put in the fact of your striking him in the leg?
 Officer Bodell: I put in the report at the time what thought was necessary for the case, yes.
 Q: And also to protect yourself, not just for the case, to protect yourself?
 A: In the position of the inaccuracies, yes. (T. 12 at 39.)
The panel heard many hours of cumulative testimony from Officer Bodell, which provided a substantial basis for their conclusion. The following testimony pertained to Officer Bodell's production of relevant information: "I'd have to say my witness statement may not be as detailed, but it fairly depicts what happened." (Tr. 12 at 8.); "It's not in the report. I didn't deem it necessary at the time." (Tr. 12 at 13, relating the failure to report the use of Capstun, a chemical weapon, in the course of the apprehension.) and "I didn't see it worth mentioning it there." (Tr. 11 at 37, explanation as to the failure to report the use of a flashlight as a weapon.) Furthermore, the panel had a full opportunity to assess Officer Bodell's bald admission that he had been untruthful when he stated in response to a question from his attorney:
 "I know it was foolish to write that scenario as it happened. All I can say is that what I wrote was incorrect, I still feel my actions as I testified what I really did was sufficient and it was poor judgment, and if I had put down exactly what happened, I don't think it would have been a problem now." (Tr. 12 at 106.)
Regarding the fourth charge, that of the use of unnecessary force in violation of Section I, sub G, part 3, the panel found that Officer Bodell violated this section by use of force without justification in three instances. The panel, in their final decision, first noted that Officer Bodell could not specify in his testimony whether he had ever attempted to open the driver's window before he smashed it with a flashlight. (See, Tr. 11 at 96, Tr. 11 at 180, Tr. 11 at 184, "I don't recall right now exactly whether tried to open it or not. I know from looking at the pictures that I couldn't have opened it now.") The panel next noted that Officer Bodell had no recollection as to whether he had tried to open the front passenger door either, prior to smashing out that window with the same flashlight. (See, Tr. 11 at 191.) As to the third finding of unjustified use of force, the panel concluded that the use of a flashlight as a weapon "to buckle" the suspect was inappropriate. Officer Bodell provided extensive testimony on which the panel based their findings in this regard:
 Q: Was [Silva] resisting you at any point while you were trying to remove him from the vehicle and get him to the ground?
 Officer Bodell: Resist may not be the appropriate word. He wasn't — as I described, I believe it was in my deposition or with Attorney Mahoney, I wouldn't consider it resisting in the form of a fight or an attempt to hurt us probably but his reaction was more of a flight, he resisted in the sense that he wanted to break free and probably escape or run, but he did not want us to take him into custody in the manner we were taking him into custody. (Tr. 11 at 103.)
The Officer also testified "we attempted bodily force to bring him to the ground to prone him out and restrain him so he wouldn't be hurt. When that didn't work, I used the flashlight that I still had in my hand and struck him behind the knee on I believe it was the right leg in an effort to buckle him under so we could bring him down." (Tr. 11 at 106.) The panel found no evidence that any officer was concerned or his own personal safety or that of his fellow officers, or that Silva had a weapon or posed any danger to the public during the arrest incident, (See, Tr. 11 at 96) and found evidence that Officer Bodell's repeated use of a flashlight to break windows and strike the suspect was an unnecessary use of force. All of these findings are supported by the record.
The hearing panel also found that Officer Bodell failed to conform to the work standards established for the position of Patrol Officer as required by the Rules and Regulations of the E.P.P.D. In falsifying a police witness statement and lying to a superior officer, the panel found that Officer Bodell did not conduct himself "in accordance with high ethical standards" and did not "ensure the civil treatment or observe the rights of all persons coming into the scope of his authority" as are required by Section I, sub G, part 19. The testimony of Major Dias and that of Officer Bodell regarding the aforementioned violations constituted substantial evidence on which to base their findings.
As to the last charge, conduct unbecoming an officer, the panel found, based on the determinations above, that the officer's conduct could be seen to adversely affect his credibility and therefore his effectiveness as a police officer. Additionally, he panel found that Bodell's action would bring disrepute to the entire Police Department.
The decision of this hearing panel, written and accompanied by findings of fact consisting of a concise statement upon each issue, fully comports with the requirements of the Law Enforcement Officers' Bill of Rights statute.
Retaliation for Exercising Rights
Officer Bodell maintains that the City impermissibly terminated him prior to a hearing. He alleges that a letter from the City Manager dated June 18, 1993 effectively terminated him in violation of the statute, § 42-28.6-14(1). "Retaliation for exercising rights" states:
 No law enforcement officer shall be discharged, demoted, disciplined, or otherwise denied promotion, transfer, or reassignment, or otherwise discriminated against in regard to his or her employment or be threatened with any such treatment, by reason of his or her exercise of or demand for rights granted in this subtitle, or by reason of the lawful exercise of his or her constitutional rights.
Reading this statutory provision in the context of the entire enactment, it is clear that the officer obtains a right to a hearing under the act only where there is a departmental recommendation that punitive action be taken against him by way of dismissal or some similar sanction. Zincone v. Mancuso,523 A.2d 1222 (R.I. 1987). The right to a hearing under the act simply does not vest until the Chief or someone in a comparable position indicates that a sanction envisioned by the terms of this provision will be imposed upon the individual who has been charged with a violation of departmental rules and regulations.Id. at 1225. Section 42-28.6-4, "Right to a Hearing" states:
 If the investigation or interrogation of a law enforcement officer results in the recommendation of some action, such as demotion, dismissal, loss of pay, reassignment, or similar action which would be considered a punitive measure, then, before taking such action the law enforcement agency shall give notice to the law enforcement officer that he or she is entitled to a hearing on the issues by a hearing committee. The law enforcement officer may be relieved of duty and shall receive all ordinary pay and benefits as he or she would have if he or she were not charged. The notice shall state the time and place of the hearing and the issues involved. An official record, including testimony and exhibits, shall be kept of the hearing.
Michael Bodell is only in a position to request a Bill of Rights hearing because the City Manager and the Police Chief of East Providence have given notice that his employment with the E.P.P.D. will be terminated by virtue of the numerous violations of the Rules and Regulations governing actions of a police officer. The City Manager's letter is not a threat in the context of the statute, as alleged by Officer Bodell. That letter provides the very basis for Officer Bodell's right to the hearing.
Conduct of the Investigation
On appeal, Officer Bodell avers that the conduct of the investigation into alleged improprieties on his part has violated the mandates of the statute. Specifically, he believes that he should have been officially notified he was under departmental investigation at the very outset. In City of East Providence v.McLaughlin, 593 A.2d 1345 (R.I. 1991), the Court held that an initial investigation, as a preliminary proceeding not resulting directly in disciplinary action, conducted to explore the need for an official investigation into a police officer's conduct, did not have to meet the requirements of the Law Enforcement Officers' Bill of Rights. In that instance, the preliminary departmental investigation laid the groundwork for the issuance of a formal sworn complaint, which then led to the official investigation. Id., at 1351.
Under the Bill of Rights statute, Officer Bodell must receive notice of the investigation conducted by the hearing committee expressly empaneled to hear testimony regarding the charges against him. The statute does not require that the Police Department notify him of their internal investigation which may or may not lead to charges, a sworn complain, and a recommendation of discipline as delineated under the statute. The investigation envisioned by the statute is that which is conducted in hearing witnesses' testimony, weighing evidence, and reaching a decision. The conduct of the investigation comported with the statutory requirements.
Breach of Confidentiality
It is further alleged that comments made regarding Officer Bodell's suspension from active duty violate the confidentiality requirements of the statute. Included in the provision "Conduct of the Investigation," the statute provides: "No public statement shall be made prior to a decision being rendered by a hearing committee and no public statement shall be made if the officer is found innocent, unless the officer requests a public statement, provided however that this subdivision shall not apply if the officer makes a public statement. § 42-28.6-2(m).
Officer Bodell maintains that a statement attributed to City Manager Lemont in the East Providence Post, July 30, 1992, violated the confidentiality requirements because the article states that Officer Bodell was suspended from active duty. The article plainly indicates that Lemont's statements were made to investigators from the c ice of the U.S. Attorney looking into a civil suit which had been recently filed by Robert Silva against the City of East Providence, and not to members of the press. The article also clearly states that Lemont and the Chief would not discuss the case with the press, citing confidentiality. These statements made in cooperation with an investigation by the U.S. Attorney cannot in any way be construed to be prohibited under the statute.
Sensitive to the confidentiality requirement in this regard, the E.P.P.D. conducted an internal investigation into allegations of leaks in the department. One officer was suspended under General Order 43-92 for violation of departmental rules and regulations relating to confidentiality and the duty to obey a superior officer. Clearly, that officer acted independently and without the approval knowledge of the Chief or the City Manager in leaking information regarding Officer Bodell's suspended status. His actions, in releasing information to the press, are in no way equivalent to a public statement which is prohibited under the statute. There is no evidence to support the contention that a public statement as made in violation of the governing statutory provisions.
Imposition of Discipline
Officer Bodell finally maintains that termination is an unreasonably drastic remedy under the circumstances, and asks this Court to recognize clear error in the hearing committee's imposition of such discipline. The Manual of the E.P.P.D. (City Exhibit 10) indicates recommended guidelines for police conduct and discipline for violations of the various rules. The Introduction to the Manual clearly states:
 The regulations in this Manual are adopted as a guide for the discipline and government of the Police Department.
 It cannot be expected that any set of regulations will cover all situations or emergencies which arise.
 The purpose of the Manual is not to provide the Chief or Appointing Officer with a tool for punishing officers. Rather, it is an attempt at improving effectiveness of the police department by making clear to all officers and employees what is expected of them and what they can expect of fellow officers and employees.
Additionally, the Code of Discipline, Section I, included in the departmental manual, states:
 This code of discipline shall be used as a guide in selecting appropriate penalties for the cause of action. It does not replace supervisory judgment. Rather, this guide provides a general framework within which the Chief of Police may exercise mature judgment in dealing with particular circumstances.
The code provides minimum and maximum penalties for the various causes of action according to whether the offense is the first, second, or third of that particular cause of action. No specific provision is made for an aggregate or various offenses, as is the case with Officer Bodell. The code does specifically allow, however, the use of discretion in the imposition of discipline.
 Any violation of the rules and regulations not specifically dealt with in the code of discipline shall have a minimum penalty of reprimand to a maximum penalty of dismissal for the first offense, subject to the discretion of the Chief of Police.
Under Police Department rules and regulations, it is clearly within the discretion of the Police Chief, using his "mature", supervisory judgment, to recommend the dismissal of Officer Bodell from the Department is also within the broad powers statutorily granted to the hearing committee convened pursuant to the Law Enforcement Officers' Bill of Rights to render a decision which sustains the charges of the City and supports the Chief's recommendation of term nation.
After a review of the record, this Court finds substantial reliable and probative evidence to support the committee's decision. The committee's recommendations within the statutory provisions and authority of § 42-28.6-1 et seq., is made upon lawful procedure, not affected by other error of law, not clearly erroneous, and well within the discretion of the Hearing Committee. Substantial rights to the appellant have not been prejudiced. Accordingly, the decision of the Hearing Committee issued on March 10, 1995 is affirmed.
Counsel shall submit the appropriate judgment for entry.
[1] For purposes of this appeal, the parties have stipulated to use of the amended version of the statute, the Law Enforcement Officers' Bill of Rights Act, P.L. 95-019 (1995).
[2] The procedure for this appeal, as stipulated to by the parties, follows the revised Law Enforcement Officers' Bill of Rights Statute 48-28.6.1, et seq.
Appeals from all decisions rendered by the hearing committee shall be to the Superior Court in accordance with sections 42-35-15 and 42-35-15.1 of the General Laws. For purposes of this section, the hearing committee shall be deemed an administrative agency and its decision shall be deemed a final order in a contested case within the meaning of 42-35-15 and 42-35-15.1 of the General Laws.
The statutes also state "The Court may require or permit subsequent corrections or additions to the record."42-28.6-12(b), 42-35-15(d).