DECISION
Before this Court is an administrative appeal filed by appellant Michael Pinto from a decision of a Hearing Committee formed under the Law Enforcement Officers' Bill of Rights. The appellant seeks reversal of the Hearing Committee's decision of April 9, 2002 that sustained a recommendation from the Chief of Police for the City of Providence that he be terminated from his position as a Providence police officer. For the reasons set forth in this decision, this Court affirms the Hearing Committee's decision.
 FACTS AND TRAVEL
Michael Pinto (the "appellant") joined the City of Providence Police Department (the "Department") as a police officer in 1995. On August 21, 1998, the appellant called the Department to indicate that he would not be reporting for his tour of duty due to illness. Later that day, Timothy Lee observed the appellant at the Fish Company Bar and Grille. As a result of this incident, the Department charged the appellant with violating § 203.12 of the Department's Rules and Regulations for making a false claim and suspended him without pay for one day.
On September 27, 1998, the appellant, while on duty, contacted Michael Figueiredo at 3:30 a.m. to request permission to go home due to illness. At 5:15 a.m., Lisa Martin, an ex-girlfriend of the appellant, called the Department and stated that the appellant had come by her house at 4:30 a.m. and was knocking at her door to be let in. A subsequent investigation by Internal Affairs revealed that Martin had called the Seekonk Police Department at that time to report this domestic disturbance and that Richard Bradley of the Seekonk Police arrived at Martin's home and confronted the appellant. Martin, however, declined to press charges against the appellant. As a result of this incident, the Department charged the appellant with both violating §§ 200.6 and 203.12 of the Rules and Regulations for misconduct and making a false claim and suspended him for two days without pay.
On December 5, 1998, the appellant once again called the Department to indicate that he would not report for his tour of duty because of illness. Later that day, Lt. Robert MacDonald and Sgt. Joseph Lennon observed the appellant in civilian clothes patronizing J.R.'s Fastlane, a local nightclub. Subsequently, the Department charged him with violating § 203.12 of the Rules and Regulations for making a false claim and again suspended him for two days without pay.
On February 1, 2000, the appellant once again called the Department to report that he would not be at work due to illness when he was not actually sick. The Department charged him with violating § 200.8 of the Rules and Regulations for failure to perform duties as required or directed and imposed a two-day suspension. The appellant accepted all of these punishments without challenge.
In February 2000, Lt. Timothy Lee, in accordance with Article IX, section 2, part E of the applicable Collective Bargaining Agreement,[1]
ordered the appellant to submit a physician's note following each occasion that he failed to report to work due to illness. On April 24, 2000, the appellant asked his immediate supervisor, Lt. Thomas Verdi, for a furlough or vacation day for April 28, 2000, stating that he had guests arriving from California.[2] Lt. Verdi denied the appellant's request because (1) he had concerns about having sufficient manpower to cover the Department's needs on that date; (2) he had earlier granted furlough leave for that day to other officers; (3) the appellant had taken a furlough leave the prior evening; and (4) he knew that the Department would be busy, as usual, at the requested time because it was a Friday evening.
On April 28, 2000 — the day for which the appellant had requested and been denied a furlough leave — he telephoned Lt. Benedicto Lanni several hours before his scheduled shift to request a personal day.[3] Lt. Lanni advised the appellant that he had already used the two personal days that he had been allotted for the year. The appellant then asked Lt. Lanni to ask Capt. Bernard Klumbis, the captain in charge of the day patrol division, if he could have the day off. Lt. Lanni contacted Capt. Klumbis, who told Lt. Lanni to contact Lt. Verdi. Lt. Lanni telephoned Lt. Verdi, who once again denied the request. Lt. Lanni telephoned the appellant and left a message on an answering machine informing him that Lt. Verdi had once again denied his request for a furlough day. Twenty minutes after Lt. Lanni left the message, the appellant telephoned Lt. Lanni. Lt. Lanni again informed the appellant that he would have to report to work that evening.
Later in the day on April 28, 2000, the appellant called in sick for that evening, though he was not in fact sick, because he wanted that evening off to receive his friends from California. When the appellant returned to work on May 1, 2000, his next scheduled work day, he did not bring a physician's note as he had previously been ordered to do. As a result of the appellant's failure to submit a physician's note on his return to work, Lt. Verdi reported in writing to Mjr. Dennis Simoneau and Capt. William Campbell that the appellant had abused his sick time. The report requested that the appellant be brought up on departmental charges, that he be suspended without pay for ten days, and that his service record since his hiring be investigated.
Also on May 1, 2000, Lt. Lee informed the appellant that his failure to submit a physician's note was in direct violation of his February 1, 2000 order to the appellant. Lt. Lee then relieved the appellant of duty and placed him on sick leave pending his submission of a doctor's note regarding his leave on April 28, 2000. On that same day, Lt. Lee sent a memorandum to Capt. Campbell informing him that the appellant had directly violated his order. The memorandum requested that the appellant be suspended for two days for violating § 200.8 of the Rules and Regulations that requires a subordinate to obey a lawful order given by a superior.[4] On May 5, 2000, Mjr. Simoneau sent a memorandum to Commissioner of Public Safety John Partington informing him of the incident and requesting that the appellant be suspended for two days without pay, or whatever he deemed appropriate, for violating § 200.8 for failing to obey Lt. Lee's order. On May 12, 2000, Commissioner Partington punished the appellant for this violation by imposing a two-day suspension, which the appellant served.
On May 19, 2000, Mjr. Simoneau sent another memorandum to Commissioner Partington, informing the Commissioner that the appellant violated § 203.12 of the Rules and Regulations by willfully making a false claim that he was sick on April 28, 2000. The memorandum requested that the appellant be asked to resign or, in the alternative, that a Law Enforcement Officers' Bill of Rights (the "Officers' Bill of Rights") hearing be convened to consider his termination. Mjr. Simoneau noted that the April 28, 2000 incident represented the fifth time that the appellant had been charged with abusing his sick time. In addition to noting the appellant's "poor attendance record," Mjr. Simoneau reported that the appellant had received a thirty-day suspension and a one-year extension of his probationary period for disrespecting Sgt. Robert MacDonald, a commanding officer, on March 2, 1996 while the appellant was off-duty.[5]
Further, the memorandum noted that the appellant had received a one-day suspension and a thirty-day grounding for attempting to cover-up an accident involving a police car on July 4, 1996.
The Department did not respond immediately to Mjr. Simoneau's report. After the April 28, 2000 incident, the appellant did not call in sick for several months. Consequently, Lt. Lee lifted his February 1, 2000 order requiring the appellant to submit a physician's note after each sick day taken. Lt. Lee later reinstated that requirement, however, after he discovered that the appellant had once again begun to call in sick.
On December 24, 2000, the appellant was involved in another disciplinary incident involving a request for assistance from the Johnston Police Department. After a number of patrol units responded to this call, including the appellant, Lt. John Kaya instructed the dispatcher to call off all but two of the cars. The appellant was driving one of the cars that Lt. Kaya asked to have called off. The dispatcher followed his instructions, airing Lt. Kaya's order as well. Notwithstanding the airing of Lt. Kaya's order by the dispatcher, the appellant continued to respond to the call from Johnston. The Department charged the appellant with a violation of § 200.2 of the Rules and Regulations for disobeying the lawful order of Lt. Kaya. Chief of Police Colonel Urbano Prignano suspended the appellant for one day on January 3, 2001 for this violation.
On February 11, 2001, Lt. Lee sent a memorandum to Mjr. Simoneau informing him that he had reinstated the order requiring the appellant to submit a physician's note to document any requested sick leave because, as soon as the first order was lifted, the appellant had resumed his earlier habit of abusing his sick leave. Furthermore, Lt. Lee's memorandum requested that disciplinary action be taken against the appellant because he had called in sick fifty-three times since October, 1999 and he had used twenty of those sick days between October 2000 and February 1, 2001, after being warned that any further abuse of sick time would result in disciplinary action. The memorandum specifically requested that the appellant be given an Officers' Bill of Rights hearing in connection with the Department's request that he be terminated from his employment.
On February 1, 2001, Colonel Richard Sullivan became Acting Chief of Police. On that same day, Lt. Cohen of the Human Resources Bureau briefed the Chief on all disciplinary action pending as to certain officers, including the charge pending against the appellant for falsely calling in sick on April 28, 2000. The Chief requested that Lt. Cohen gather the "paperwork" on the charge against the appellant and then advise him. Tr. March 11, 2002 at 165.
Though the exact timing and circumstances are unclear from the record, at some point around the time that Lt. Cohen advised the Chief about the charge against the appellant, it came to the Chief's attention that the appellant had arrived late to court. On April 10, 2001, the appellant was scheduled to appear in court before a judge of the Rhode Island Traffic Tribunal at 9:00 a.m. On that date, although he had signed in at that court and noted his arrival time as 9:00 a.m., he actually had not arrived until some point after 9:00 a.m. Upon his arrival, he immediately went to the second floor of the court building, understanding that hearings were held on that floor. After noticing that the courtrooms were unoccupied, he returned to the first floor. Though the appellant eventually found the courtroom in which the calendar is called, he learned from Court Prosecution Officer John Ricci that the speeding case in which he was to have testified had been dismissed because he was not present at the call of the calendar. Officer Ricci was successful, however, in having the charge reinstated, and the Court continued the hearing until April 17, 2001. Soon after receiving a report of this incident, the Chief recommended that the Department reassign the charge against the appellant for calling in sick on April 28, 2000 for another day, pending a determination as to whether the charge of making a late court appearance on April 10, 2001 would be included in the case against the appellant.
On April 17, 2001, in addition to the speeding case that had been continued from April 10, 2001, the appellant had another scheduled matter in which he was to testify involving a charge of refusal to take a breathalyzer test. The practice of the Department is to record court notifications into a "Court Book" that notifies officers of court matters, court dates, and the courts where these matters are to be heard. Officers are expected to check the Court Book periodically. The appellant failed to check the Court Book and, consequently, did not appear on April 17, 2001. Officer Ricci notified Lt. Lee, Commanding Officer of the Traffic Bureau, that the appellant was late for court on April 10, 2001 and that he missed court on April 17, 2001. Because the appellant was under the command of Capt. Oates, Lt. Lee also notified Capt. Oates that the appellant failed to make these court appearances. Charges against the appellant for being late for court on April 10, 2001 and missing court on April 17, 2001 were combined with the other pending departmental charges against the appellant.
On July 27, 2001, upon completion of an investigation by the Department, Chief Sullivan issued a sworn complaint that alleged that the appellant had violated several of the Department's Rules and Regulations, including § 203.12 (false claims); § 200.5 (standard of conduct); § 200.6 (rules governing conduct); § 200.13 (demeanor); § 200.18 (truthfulness); and § 200.2 (obedience to laws and rules). The complaint incorporated by reference certain documents that contained specific charges. After listing the specific alleged rules violations, the complaint then asks that the appellant be terminated based "among other things" on: (1) the April 28, 2000 incident in which the appellant falsely called in sick; and (2) the April 10, 2001 and April 17, 2001 incidents in which the appellant, respectively, was late for and failed to appear at the Rhode Island Traffic Tribunal.
The appellant exercised his rights under the Officers' Bill of Rights and requested a hearing before a committee pursuant to R.I. Gen. Laws § 42-28.6-4(b) and (c). The Hearing Committee held hearings on February 6, 2002; February 8, 2002; March 11, 2002; and March 12, 2002. The parties agreed, at the appellant's request, that the proceedings be bifurcated. Thus, the first phase of the hearing involved the presentation of evidence as to whether the appellant was guilty of the alleged misconduct. The second phase, which was to go forward only if the Hearing Committee determined after presentation of the evidence that the appellant was guilty of that alleged misconduct, involved the appropriateness of the recommended punishment of termination.
On April 9, 2002, a majority of the Hearing Committee determined that the Department had presented sufficient evidence to sustain its claim that the appellant had violated §§ 200.2, 200.5, 200.6, 200.18, and 203.12 of the Rules and Regulations with respect to calling in sick on April 28, 2000. The Hearing Committee unanimously decided that the Department did not present sufficient evidence to sustain the claim that the appellant's conduct on April 28, 2000 violated the Department's Rules and Regulations concerning demeanor under § 200.13. Finally, a majority of the Hearing Committee determined that the appellant had violated §§ 200.2, 200.5, and 200.6 of the Rules and Regulations with respect to being late for court on April 10, 2001 and missing court on April 17, 2001.
During the penalty phase of the proceedings, the Hearing Committee heard testimony concerning prior punishments meted out to the appellant, as well as testimony concerning his value as an officer. Following deliberations as to the appropriate punishment to impose for the violations, a majority of the Hearing Committee adopted the Chief's recommendation that the appellant be terminated. The majority noted the following: the present hearing represented the eighth time that the appellant had been charged with violating the Rules and Regulations; he had been suspended without pay on seven occasions; and he had been charged four times with making false claims in violation of § 203.12 of the Rules and Regulations.
The appellant filed a timely appeal with this Court on May 8, 2002, in accordance with R.I. Gen. Laws § 42-28.6-12, naming the individual members of the Hearing Committee as defendants. The appellant argues that his rights were violated because: (1) he was not properly notified of one of the Rules and Regulations that he was found to have violated; (2) he was subjected to double jeopardy with respect to the April 28, 2000 incident; and (3) the decision to terminate him was arbitrary and capricious and characterized by an abuse of discretion in light of the Department's previous response to similar violations. He therefore requests that this Court overturn the Hearing Committee's decision to terminate him and reinstate him as a member of the Department with all back pay and benefits. The Department responds that this Court should affirm the Hearing Committee's decision because (1) the nature of the charges against the appellant are clearly set forth in the complaint; (2) the penalty that the Hearing Committee sustained was based on the appellant's documented, problematic work record and history; and (3) the facts, as found by the Hearing Committee, are supported by substantial and competent evidence of record.
 STANDARD OF REVIEW
This Court has jurisdiction of this administrative appeal pursuant to R.I. Gen. Laws §§ 42-28.6-12 and 42-35-15. Section 42-28.6-12 of the Rhode Island General Laws, referred to herein as the Law Enforcement Officers' Bill of Rights, is "the exclusive remedy for permanently appointed law enforcement officers who are under investigation by a law enforcement agency for any reason that could lead to disciplinary action, demotion or dismissal." City of East Providence v. McLaughlin,593 A.2d 1345, 1348 (R.I. 1991) (citing Lynch v. King, 120 R.I. 868, 870 n. 1, 391 A.2d 117, 119 n. 1 (1978)). Under the provisions of this statute, an officer facing departmental charges may request a hearing before a Hearing Committee composed of three active law enforcement officers. R.I. Gen. Laws §§ 42-28.6-1 and 42-28.6-4. The Hearing Committee has broad discretion to modify in whole or in part the sanctions that the charging authority recommends. Culhane v. Denisewich,689 A.2d 1062, 1064-65 (R.I. 1997) (citing State Department ofEnvironmental Management v. Dutra, 121 R.I. 614, 401 A.2d 1288 (R.I. 1979)). An appeal from the decision of a Hearing Committee is taken pursuant to R.I. Gen. Laws § 42-28.6-12, which provides that the Hearing Committee "shall be deemed an administrative agency and its final decision shall be deemed a final order in a contested case within the meaning of [the Administrative Procedures Act, R.I. Gen. Laws] §§42-35-15 and 42-35-15.1."
The Administrative Procedures Act outlines the standard of review applicable to this appeal, as follows:
 [t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
R.I. Gen. Laws § 42-35-15(g). When reviewing an agency decision, this Court may not substitute its judgment for that of the agency with respect to the credibility of witnesses or the weight of evidence concerning questions of fact. Center for Behavioral Health, R.I., Inc. v. Barros,710 A.2d 680, 684 (R.I. 1998). This Court's review is limited, therefore, to determining whether substantial evidence exists to support the agency's decision. Newport Shipyard v. R.I. Comm'n for Human Rights,484 A.2d 893 (R.I. 1984). Substantial evidence is "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance."Id. at 897 (quoting Caswell v. George Sherman Sand Gravel Co.,424 A.2d 646, 647 (1981)). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Mgmt.Council, 434 A.2d 266, 272 (R.I. 1981). If competent evidence supports the agency's findings and conclusions, this Court is required to uphold them. R.I. Pub. Telecomms. Auth. v. R.I. Labor Relations Bd., 650 A.2d 479, 485 (R.I. 1994). "[L]egally competent evidence is marked `by the presence of "some" or "any" evidence supporting the agency's findings.'" State v.R.I. State Labor Relations Bd., 694 A.2d 24, 28 (R.I. 1997) (citingEnvironmental Scientific Corp. v. Durfee, 621 A.2d 200, 208 (R.I. 1993)). Questions of law, however, are not binding on a reviewing court and may be freely reviewed to determine the law and its applicability to the facts. Carmody v. R.I. Conflict of Interest Comm'n, 509 A.2d 453, 458 (R.I. 1986).
 THE COMPLAINT AGAINST THE APPELLANT AND THE HEARING THEREON CONFORMED WITH THE APPELLANT'S DUE PROCESS RIGHTS
The appellant argues on appeal that his due process rights were violated with respect to the second charge — being late for a court date and missing a subsequent court date at the Rhode Island Traffic Tribunal — because the complaint failed to set forth which of the Department's Rules and Regulations he had allegedly violated. He maintains that the Rules and Regulations that he was alleged to have violated, and that are listed above the first charge in the complaint, cannot possibly apply to the second charge because one charge has nothing to do with the other. It is the appellant's contention, therefore, that the complaint does not clearly set forth which rule(s) and regulation(s) he purportedly violated for missing the court dates. He argues that § 203.12 (false claims), § 200.13 (demeanor), and § 200.18 (truthfulness) have nothing to do with the charge involving the missed court appearances and that it is a "stretch" to apply §§ 200.5 (standard of conduct), 200.6 (rules governing conduct), and 200.2 (obedience to laws and rules) to that charge.
The Department responds that the nature of the charges against the appellant are fully, explicitly, and succinctly set forth in the complaint. The Department notes that the complaint sets forth both the Rules and Regulations that the appellant allegedly violated and the conduct that was the basis for its claims. The Department submits that the Rules and Regulations set forth in the complaint apply to all of the misconduct identified in the complaint. The Department also argues that the evidence presented at the hearing shows that there can be no legitimate challenge to the fact that the appellant received an explanation of the charges and evidence and an opportunity to respond to them.
"Administrative review of disciplinary decisions is governed by requirements that agencies are bound by their own rules, that review bodies comply with all statutory and other legal requirements, and that the employee is entitled to due process of law in review proceedings." Isidore Silver, Public Employee Discharge and Discipline § 7.1 at 7-4 (1990). The Fifth Amendment to the United States Constitution and Article I, § 2 of the Rhode Island Constitution provide that before a person can be deprived of a property interest, that person must be afforded due process of law. The Constitution does not create the property interest; rather, the property interest is "created and [its] dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).
The United States Supreme Court has held that due process requires, prior to termination, that public employees with a property interest in their job must be given notice of the charges against them, an explanation of the evidence, and an opportunity to respond. ClevelandBd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985). Furthermore, the Rhode Island Supreme Court has recognized that "the foundation of due process rests on an opportunity to be heard in a meaningful manner at a meaningful time." Leone v. Town of New Shoreham, 534 A.2d 871 (R.I. 1987) (citing Brock v. Roadway Express, 481 U.S. 252 (1987)).
Under the Officers' Bill of Rights, if the investigation of a law enforcement officer results in the recommendation of some punitive action, the investigative agency, before taking such action, must notify the officer in writing that he or she is entitled to a hearing. R.I. Gen. Laws § 42-28.6-4. Notice under this section must provide the officer with the following information:
 (i) The nature of the charge(s) against him or her and, if known, the date(s) of the alleged offense(s);
 (ii) The recommended penalty;
 (iii) The fact that he or she has five (5) days from receipt of the notice within which to submit a written request for a hearing; and
 (iv) The name and address of the officer to whom a written request for a hearing (and other related written communications) should be addressed.
Id. at § 42-28.6-4(b).
In the present matter, the evidence of record shows that the appellant has been afforded every process due to him under the United States Constitution, the Rhode Island Constitution, and the Officers' Bill of Rights. On June 20, 2001, when the Chief notified the appellant in writing that he was recommending termination, the appellant's right to a hearing as provided under the statute attached. The Chief's letter clearly informed the appellant of that right, and the fact that he had five days from his receipt of the letter to submit a written request to Lt. Kenneth Cohen, at an address provided therein, if he wished to challenge the termination under the statute. Dep't.'s Ex. 1. The Chief's letter signified an intent to impose discipline, in accordance with the requirements of the statute, triggering the right to a hearing and the notice provisions thereof.
The appellant also had notice as to the reasons for the Chief's recommendation. In accordance with R.I. Gen. Laws § 42-28.6-4(b)(i), the complaint sets forth the nature of both charges against the appellant, as well as the dates of the misconduct that resulted in those charges. The complaint clearly restated the April 10, 2001 and April 17, 2001 incidents in which the appellant allegedly was late for and then absent from the Rhode Island Traffic Tribunal. The complaint also lists the sections of the Rules and Regulations that the appellant is charged with violating as a result of those missed court appearances, including § 200.2 (obedience to laws and rules), § 200.5 (standard of conduct), and § 200.6 (rules governing conduct). Dep't.s' Ex. 1.
The complaint does not particularize whether the sections of the Rules and Regulations enumerated in the complaint apply to either the first charge, the second charge, or both. Yet nowhere in the complaint is it stated that the enumerated sections apply only to the first charge, as the appellant argues. It is not true, therefore, that the complaint fails to list the rules and regulations that the appellant violated for missing the two court appearances and which are the basis of the second charge. However inartfully the complaint may have been drafted, it is obvious from a fair reading of it which sections of the Rules and Regulations apply to which charges.
The Hearing Committee determined that the Department had presented sufficient evidence that the appellant had violated those three sections by missing court on those two dates. Decision at 4. Inasmuch as the appellant had every notice required by due process, the hearing committee process did not violate his constitutional rights. Additionally, because the appellant had the opportunity to hear testimony offered against him, to examine witnesses, and to present evidence in his favor during both phases of the bifurcated proceeding, the hearings clearly allowed him a forum "to be heard in a meaningful manner at a meaningful time." Leone,
534 A.2d at 874.
The record indicates that the appellant was afforded every right and notice requirement under the Officers' Bill of Rights. He received all constitutional due process. The appellant has failed to show, therefore, that his substantial due process rights guaranteed by both the state and federal constitutions were prejudiced by either the form and content of the complaint against him, the hearings with respect to the complaint, or the Hearing Committee's decision thereon.
 THE CHARGE IN THE COMPLAINT OF FALSELY CALLING IN SICK IS NOT BARRED BY THE CONSTITUTIONAL PROHIBITION AGAINST DOUBLE JEOPARDY
The appellant next argues that charging him with a violation of the Rules and Regulations in the complaint for calling in sick on April 28, 2000, after he had already been punished with a two-day suspension for that same incident, constitutes double jeopardy. He maintains that the underlying facts that triggered his two-day suspension were the same set of facts that triggered this charge in the complaint.
The Department responds that it has not disciplined the appellant twice for the same offense because the facts underlying each offense were distinct. The Department notes in this regard that the appellant waived this argument on appeal by failing to object, on double jeopardy grounds, during the guilt phase of the bifurcated hearing to the Hearing Committee's consideration of the charge that he falsely called in sick on April 28, 2000. The Department argues that basing the appellant's termination on the April 28, 2000 incident in which he falsely called in sick, his missed court appearances on April 10, 2001 and 17, 2001, and his prior disciplinary conduct is not double jeopardy.
Due process in employment disputes requires the adherence to principles analogous to the Fifth Amendment's protection against double jeopardy. Tim Bornstein, et al., Labor and Employment Arbitration, § 15.07[2][a] (2d ed. 2002); see also Dep't of Environmental Protection v.Barker, 654 So.2d 594, 595 (Fla. 1995) ("[a]n agency may not reach a decision as to disciplinary action on one occasion, and then at a later date increase the disciplinary action so that the agency disciplines the employee twice for the same offense"). The key to this employment doctrine is not the Constitution, but, rather, fundamental fairness. Bornstein, Labor and Employment Arbitration, supra, § 15.07[2][a]. When an employee is suspended for an offense, therefore, it is unfair to fire him before he has committed a second offense. Id. To determine whether an employee has been subjected to double jeopardy, the question is whether the initial discipline was, in some sense, final. Id. Double jeopardy does not apply, however, where the action for which an employee is disciplined is considered in light of the employee's entire record. Id. at § 15.07[2][c] (reporting that an arbitration proceeding had determined that double jeopardy was not found where a thirty-day suspension had been imposed for three latenesses in light of an overall poor attendance record, even though the employee had been disciplined for each of the earlier infractions); see also Silver, Public EmployeeDischarge and Discipline, supra, § 5.9 (observing that "discipline cannot be imposed again for the same misconduct, but prior conduct can be taken into account as a circumstance in determining the penalty to be imposed for later violations").
In the present matter, the appellant was suspended for two days for violating § 200.8 of the Rules and Regulations as a result of not obeying a superior officer's order to submit a physician's note after calling in sick. This order complied with the Collective Bargaining Agreement and thus was lawful. The Department did not premise this suspension on a finding that the appellant had falsely called in sick on April 28, 2000 but simply on a determination that the appellant had failed to document his illness in compliance with the order of his superior officer. Evidence that the suspension was limited to the fact of insubordination can be gleaned from the chronology of the disciplinary proceedings and the distinct nature of the two charges arising out of the April 28, 2000 incident: the charge of violating the order of a superior officer by not providing the requisite medical documentation of illness (dated May 1, 2000) and the order imposing a two-day suspension on appellant with respect to that charge (dated May 12, 2000) both occurred before May 19, 2000 when Mjr. Simoneau first recommended to the Department that the appellant be charged additionally with the offense of willfully making a false claim that he was sick on April 28, 2000 and be asked to resign or be terminated (a recommendation that ripened into the second charge arising out of the April 28, 2000 incident on July 27, 2001).
The two-day suspension imposed on the appellant, which he served and did not challenge, was for disobeying Lt. Lee's order relative to the April 28, 2000 incident. This initial discipline for that incident was in no sense final with respect to the issue of abuse of sick leave, inasmuch as the two-day suspension only served to punish the appellant for failing to obey the order to submit a physician's note. See Bornstein, Labor andEmployment Arbitration, supra, § 15.07[2][a] (instructing that the finality of the initial discipline raises the issue of double jeopardy). Indeed, the suspension could not have reflected final discipline for the abuse of sick leave charge because as of the date of imposition of the suspension, the appellant had not yet been charged for making a false claim of illness. Whether the appellant was in fact sick was not the Department's immediate concern in disciplining him for insubordination in failing to submit a physician's note to verify his claimed illness.
The recommendation for termination, on the other hand, was based in part on the fact that the appellant lied to the Department when he stated that he was sick on April 28, 2000. Mjr. Simoneau first recommended termination, citing the appellant's conduct in unjustifiably calling in sick on April 28, 2000, as well as past disciplinary actions against the appellant. By the time of Lt. Lee's February 11, 2001 memorandum to Mjr. Simoneau, no action had been taken against the appellant for falsely calling in sick on April 28, 2000. After the Department's investigation, the appellant was charged with violating a number of enumerated Rules and Regulations for calling in sick on April 28, 2000 that did not involve insubordination and for missing court appearances on April 10, 2001 and April 17, 2001. As a result of these incidents, and in consideration of the appellant's entire work record, the Department recommended that the appellant be terminated.
In other words, the two-day suspension was the result of events that occurred after April 28, 2000, while the related violation that led, in part, to termination was the result of events that occurred on April 28, 2000. Thus, the termination was not based on the same set of facts that triggered the two-day suspension. Because double jeopardy does not apply where the action for which an employee is disciplined is considered in light of the employee's entire record, the actions of the Department at no time placed the appellant in double jeopardy. Accordingly, appellant's claim that the April 28, 2000 charge of filing a false sick leave claim constituted double jeopardy — a claim that he belatedly raised for the first time at the penalty phase of the hearings after he had been adjudicated guilty as charged and was facing the prospect of termination — must fail.
 THE HEARING COMMITTEE'S DECISION TO UPHOLD THE APPELLANT'S TERMINATION MUST STAND
The appellant finally argues that the Hearing Committee's decision to sustain his termination was arbitrary, capricious, and an abuse of discretion in light of the manner in which the Department has handled such misconduct in the past. The appellant admits his indiscretion in taking a sick day on April 28, 2000 when he in fact was not sick, but he maintains that he should not have been terminated for doing so after being given a mere two-day suspension without pay for the same behavior in 1998. He claims that he was the first officer to face the new Chief's philosophy of ending the longstanding policy of issuing only one- and two-day suspensions for officers who call in sick when in fact they are not sick. Had the Department employed the usual methods of progressive discipline, the appellant maintains, he would have realized beforehand that continuous violations of the same Rules and Regulations would not have been tolerated. He further notes the arbitrariness of recommending his termination for an incident that had occurred fifteen months earlier.
In response, the Department submits that its decision to uphold the appellant's termination is not arbitrary or an abuse of discretion and that its decision is supported by the substantial and competent record evidence. The Department argues further that the time period between when the appellant was last disciplined and the filing of the complaint is not violative of the Officers' Bill of Rights. It is the Department's contention that basing the appellant's termination on falsely calling in sick on April 28, 2000, his subsequent missed court appearances, and his prior disciplinary record is the essence of progressive discipline.
Section 42-28.6-4(a) of the Rhode Island General Laws provides that "[d]isciplinary action for violation(s) of departmental rules and/or regulations shall not be instituted against a law enforcement officer under this chapter more than three (3) years after such incident, except where such incident involves a potential criminal offense . . . ." Section 42-28.6-6(a) authorizes the Hearing Committee to admit evidence that possesses "probative value commonly accepted by reasonable and prudent [persons] in the conduct of their affairs." The Rhode Island Supreme Court has recognized that ". . . there may be occasions when it would be difficult for the charging authority to justify a recommendation of the type of severe punishment that triggers the creation of a hearing committee if that charging authority is relying on a single act of alleged misconduct." Zincone v. Mancuso, 523 A.2d 1222, 1225 (R.I. 1987). "[I]t is not merely the evidence of each incident that would justify the dismissal recommendation, but it is the repeated nature of the incident or similar conduct that would indicate that the officer should be dismissed from the force." Id. Generally, "there is no common-law rule requiring an agency to apply penalties equally and consistently." Silver, Public Employee Discharge and Discipline, supra,
§ 5.9. "No estoppel is worked simply because an agency has previously failed to penalize the same conduct." Id. (citing Goree v. Department ofCorrections, 468 So.2d 829 (La.Ct.App. 1985)).
In the present matter, the charge against the appellant for falsely calling in sick on April 28, 2000 was brought within the three-year limitation period prescribed by the Officers' Bill of Rights and thus was timely heard by the Hearing Committee. That charge had its genesis in a memorandum to Commissioner Partington by Mjr. Simoneau dated May 19, 2000 (after the appellant had already been suspended on May 12, 2000 for two days for not documenting that illness in compliance with the order of his superior officer) in which Mjr. Simoneau recommended that the appellant resign or that an Officers' Bill of Rights hearing be commenced to consider his termination. That recommendation lay dormant — and was never acted upon, resolved or withdrawn — until July 27, 2001, when it ripened into a formal charge that encompassed not only the allegation of falsifying a sick leave claim but other alleged intervening misconduct. The Hearing Committee thereafter convened at the appellant's request to assess whether he had violated the Rules and Regulations and, if so, to determine the appropriateness of the recommended discipline.
A review of the record shows that the appellant admitted that he falsely called in sick on April 28, 2000 to receive friends arriving from California and, further, that this action violated § 200.8 of the Rules and Regulations for failing to obey a lawful order given by a superior officer. Tr. Feb. 8, 2002 at 149. The record also shows that the appellant was aware that it was his responsibility to check the Court Book and that he should have been in court at 9:00 a.m. on April 10, 2001. Tr. Feb. 8, 2002 at 151. Furthermore, the appellant's own testimony indicates that he did not check the Court Book and, consequently, missed court on April 17, 2001. Tr. Feb. 8, 2002 at 153. The appellant also testified that his failure to appear in court violated § 200.2 of the Rules and Regulations requiring obedience to laws and rules. Tr. Feb. 8, 2002 at 159. The evidence shows that before falsely calling in sick on April 28, 2000, the appellant had been punished for making similar false claims on four prior occasions. He had been charged with violations of the Department's Rules and Regulations on eight prior occasions and had been suspended without pay on seven prior occasions. The chronic, unlawful nature of this misconduct by an officer sworn to uphold the law amply justifies the Department's recommendation for termination and the Hearing Committee's decision to sustain that recommendation.
The Department did not violate settled precepts of progressive discipline by recommending the appellant's termination after a series of punishments that were no greater than two-day suspensions. The concept of progressive discipline permits the consideration of an employee's past record when the penalty requested is termination. Elkouri Elkouri,How Arbitration Works, 926-29 (5th ed. 1997). The Department was within its rights to look back at the appellant's employment record in making its recommendation for termination. It is not precluded by statute or case law from considering the appellant's entire work record when imposing punishment for a later violation of its Rules and Regulations. This record reveals numerous suspensions imposed following the occurrence of specific instances of misconduct. Despite these suspensions and the fact that the charge of falsifying a sick leave claim on April 28, 2000 (as opposed to simply violating the order of a superior officer in not documenting that alleged illness) remained pending, the appellant failed to correct his behavior. He again disobeyed the lawful orders of a superior officer when he failed to stop responding to a call for assistance from the Johnston police department, as directed, on December 24, 2000. In addition, he was late for and then failed to appear for court appearances at the Rhode Island Traffic Tribunal on April 10, 2001 and April 17, 2001, respectively. Based on the appellant's disciplinary record, this Court cannot conclude, as a matter of law, that the Hearing Committee's decision to sustain the Department's recommendation of termination of appellant's employment was arbitrary, capricious or an abuse of discretion.
It is not the responsibility of this Court to question the Department's philosophy regarding the gradation of discipline from suspension to termination, even if that philosophy changed over time to the appellant's detriment. The appellant cannot defend his misconduct. Moreover, it is simply disingenuous for him to suggest that he should not be punished for a pattern of misconduct that clearly justifies termination (and perhaps should have led to longer suspensions or termination previously) on the grounds that he thought he had more chances left in the form of suspensions before the harsh penalty of termination would be imposed.
In this Court's view, the Hearing Committee had reliable, probative, and substantial evidence before it that the appellant repeatedly had violated the Department's Rules and Regulations. In deciding to sustain the Chief's recommendation for termination, therefore, the Hearing Committee neither acted arbitrarily or capriciously nor abused its discretion.
 CONCLUSION
After review of the entire record, this Court finds that the decision of the Hearing Committee did not violate the appellant's due process rights or place him in double jeopardy. The Hearing Committee's decision, therefore, is not in excess of its statutory authority or violative of constitutional provisions. The Hearing Committee's decision to sustain the Chief's recommendation to terminate the appellant is supported by the reliable, probative, and substantial evidence contained in the record and is not arbitrary, capricious, or reflective of an abuse of discretion. The substantial rights of the appellant have not been prejudiced by the decision. Accordingly, the Hearing Committee's decision is affirmed.
[1] Article IX, section 2, part E provides, in pertinent part, as follows:
 [t]he Chief of the Department may require a physician's certificate or other satisfactory evidence in support of any request for sick leave; [sic] provided the member involved has been told on the occasion of his last prior absence for sickness that such evidence might be required for any future sick leave request.
[2] At the beginning of each year, officers generally select by seniority a block of consecutive vacation days. This process does not require that an officer get a supervisor's permission for his or her selected block of time. An officer also may save some vacation days to use throughout the year. To use vacation days in this latter manner, an officer must obtain a supervisor's permission.
[3] Under the collective bargaining agreement, personal days are days, in addition to vacation days, that an officer can take time off from work without first obtaining permission from a supervisor.
[4] Section 200.8 of the Department's Rules and Regulations provides, in pertinent part, that "[p]ersonnel shall perform duties as required or directed by law; [sic] departmental order, rule, procedure, policy, or by lawful order of a supervisor."
[5] The Chief of Police at that time, Col. Urbano Prignano, Jr., determined that the appellant's conduct toward Sgt. MacDonald violated §§ 200.6, 200.12, 200.13, and 200.14 of the Department's Rules and Regulations.