[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
The matter before this Court, Jeffrey Scott Hornoff v. City of Warwick Police Department raises issues that the Rhode Island judicial system has never before decided and questions that were not addressed by the legislature in enacting the Law Enforcement Officers' Bill of Rights (LEOBOR). Specifically, is a former police officer who was convicted of a murder that he did not commit entitled to the same relief, including reinstatement and back pay that would be available to any other officer who had been acquitted at trial or had any conviction reversed by the Supreme Court?
The unique circumstances of this case involve Jeffrey Scott Hornoff, a police detective who was convicted of a murder committed by another man. As a result of this wrongful conviction, Hornoff was dismissed from his position with the Warwick Police Department. Now, Hornoff finds himself back in the same courthouse where he both lost, and regained his freedom. He comes before this Court and asks for an order granting his reinstatement, back pay, and benefits for the period of time during his suspension and dismissal from the police department. He seeks this relief under the Law Enforcement Officers' Bill of Rights. The city argues that Hornoff cannot gain the relief he seeks under the LEOBOR because he no longer qualifies as a law enforcement officer due to his dismissal from the police department after the Supreme Court of Rhode Island affirmed his conviction for the crime of murder.
The principles of equity, based on fairness, common sense, and justice all point this Court to one undeniable conclusion. An innocent man should not have spent six years in jail for a crime he did not commit, and an innocent man should not be burdened by a wrongful conviction.
For the following reasons this Court finds in favor of Hornoff and orders that the Warwick Police Department grant him the relief he seeks, specifically reinstatement as a detective, back pay and benefits lost as a result of being terminated.
 FACTS AND TRAVEL
This case began in August of 1989 when Victoria Cushman was murdered in her Warwick apartment. Jeffrey Scott Hornoff, the aforementioned Warwick police detective, was interviewed as part of the criminal investigation of Cushman's murder. The police initially connected Hornoff and Cushman through two pieces of circumstantial evidence. First, it came to light that Hornoff had engaged in an extramarital affair with Cushman. Second, a handwritten note to Hornoff was found in Cushman's apartment. As part of his interview with the Warwick Police, Hornoff passed a polygraph test. After the interview Hornoff was advised that he was not a suspect in the investigation.
Thereafter the leads in the investigation went cold. In 1991, the Rhode Island State Police began their own investigation into the homicide. The state police regarded Hornoff as a suspect because, among other reasons, the adulterous affair, the note left by the victim, and repeated false statements made to the police by Mr. Hornoff. In 1994 Hornoff was indicted on a charge of murder. On December 29, 1994, two days after the indictment, Hornoff was suspended from the Warwick Police Department without pay, pursuant to statute.
In 1996, Hornoff went on trial for the murder of Victoria Cushman. On June 19, 1996 Hornoff was found guilty. As a result of the conviction he was sentenced to life in prison. More than four years later, on October 24, 2000, the Rhode Island Supreme Court issued an opinion affirming Hornoff's conviction. Two days later Hornoff was dismissed from the Warwick Police Department. On October 29, 2000, Hornoff's health, dental, and other benefits were terminated pursuant to statute.
From 1996 to 2002, Hornoff was incarcerated in the Adult Correctional Institute in Cranston. In November of 2002 another man stepped forward and admitted to committing the murder for which Hornoff was in prison. A man named Todd Barry, who had never been approached by authorities nor considered a suspect, confessed to the murder of Cushman. On November 6, 2002, Hornoff filed an Amended Application for Post-Conviction Relief. On that day he was also released from prison.
On January 6, 2003 Todd Barry pled guilty to the murder of Victoria Cushman in Superior Court. That same day Hornoff's Amended Application for Post-Conviction Relief was granted. The charges and indictment were both dismissed and the felony conviction for murder was vacated. ON June 6, 2003 Hornoff's "criminal record" was expunged in the "interests of justice".
On August 15, 2003, Hornoff filed with this Court his "Application for Order to Show Cause why Jeffrey Scott Hornoff should not be Reinstated and Granted Other Relief Pursuant to the Law Enforcement Officers' Bill of Rights."
The City of Warwick Police Department filed its Response on October 2, 2003 opposing Hornoff's application. Specifically, the Police Department argues that:
 (1) At the time of the termination of his employment with the Warwick Police Department, applicant's conviction of the felony crime of murder had become final after his appeal to the Rhode Island Supreme Court was denied. Accordingly, argues the City, applicant's dismissal was lawful and proper, and all other provisions of Chapter 28.6 of Title 42 ceased to apply.
 (2) Applicant is ineligible to serve as a police officer in the City of Warwick pursuant to Section 52-8 of the Code of Ordinances of the City of Warwick and therefore cannot be reinstated
 SECTION 52-8 OF CODE OF ORDINANCES
Addressing the Police Department's second argument first: in essence the Department argues that Hornoff cannot be reinstated because he pleaded nolo contendere to using a false police identification card in an attempt to secure discount movie tickets from Showcase Cinema.
Section 52-8 of the Code of Ordinances of the City of Warwick, which was enacted in 1971 provides:
 "No person shall be appointed or serve as a police officer, constable, special police officer or reserve police officer who has been convicted of, found guilty of, pleaded guilty or nolo contendere to, or placed on a deferred or suspended sentence or on probation for any crime which involves moral turpitude or a felony.
Thus, argues the Department, his plea under North Carolina v.Alford not to contest the misdemeanor offense of obtaining money under false pretenses under $500. and the imposition on January 10, 2000 of a period of one year probation disqualifies Hornoff under 52-8 from serving as a police officer. Accordingly argues the Department, he cannot be reinstated as a police officer. Hornoff argues that 52-8 of the Warwick City Code cannot supercede the disciplinary scheme set up by the legislature in its enactment of the LEOBOR. Certainly the City can set out qualifications for those who apply for a position on its police department. However, the preclusion or disqualification of any member of the department from continuing to serve based on a conviction or plea to a felony or any crime which involves moral turpitude is in conflict with the LEOBOR which, enacted by the General Assembly in 1976 (5 years after enactment of the ordinance) has statewide application.
In Town of Warren v. Thornton-Whitehouse, 740 A.2d 1255 (R.I. 1999), our Supreme Court stated "a municipal ordinance is preempted if it conflicts with a state statute on the same subject." Further, in the seminal case of Lynch v. King,120 R.I. 868 (1978), our Supreme Court held that the LEOBOR does not violate the home rule amendment since police officers, while they may be appointed by an individual city or town, act for all the inhabitants of the state, and not only for the residents of the appointing community, and the statute applies to all cities and towns and does not affect their government. Thus, the Department's argument that Hornoff's plea of nolo contendere to the misdemeanor involving a crime of moral turpitude disqualifies him under the City Ordinance from being reinstated or serving as a Warwick Police Officer must fail. The LEOBOR is the exclusive statute governing the disciplinary action (including termination) against state and municipal law enforcement officers. Clearly, in the circumstances of this case, no disciplinary action was sought by the department because of the plea to obtaining money under false pretences and, thus, no sanction nor penalty can be imposed because of that "violation.
 FINALITY
The City's statutory argument rests within its reading of the Law Enforcement Officers' Bill of Rights. The city believes that it owes Hornoff nothing because Hornoff is no longer a law enforcement officer by virtue of his dismissal in 2000. The city argues that it dismissed Hornoff after the Rhode Island Supreme Court affirmed Hornoff's conviction; therefore, the city states that the appeals process was final and the dismissal proper. The city relies on R.I.G.L. § 42-28.6-13(I) which reads:
 Any law enforcement officer who pleads guilty to or no contest to a felony charge or whose conviction of a felony has, after or in the absence of a timely appeal, become final may be dismissed by the law enforcement agency and, in the event of such a dismissal, other provisions of this chapter shall not apply.
The city claims that any liability it may have owed to Hornoff under the LEOBOR ceased upon the Rhode Island Supreme Court's affirmation of the conviction. In short, the city argues the Supreme Court's decision constituted finality. That position forces the city to argue, in effect, that Hornoff's actual innocence makes no difference in consideration of this matter!
While it is true that the provision of 42-28.6-13(I) did authorize and permit the Warwick Police Department to dismiss Detective Hornoff after his appeal to the Rhode Island Supreme Court was denied and his conviction became final that provision must be considered along with subsection (H) of the same section of the General Laws:
 Whenever, upon appeal, such conviction is reversed, the suspension under this subsection shall terminate and the law enforcement officer shall forthwith be paid the salary and benefits that would have been paid to him or her during that period of suspension."
In the unique circumstances of this case the Superior Court on January 6, 2003 vacated Hornoff's conviction when he applied for post conviction relief. That action of the Trial Court, from which no appeal was taken, became final and has the same legal effect as does a decision of the Supreme Court reversing a conviction: the subject is re-entitled to the presumption of innocence!
In the circumstances presented in this case not only is he entitled to the presumption, the reality is he is in factinnocent! Should not an innocent person enjoy the same rights and benefits as maybe a guilty person who had his/her conviction reversed because of, say, an improper search and seizure by the police of the critical evidence used to convict?
I think so!
The Law Enforcement Officers' Bill of Rights was "designed to protect the rights of policemen threatened with disciplinary action." Lynch v. King, 120 R.I. 868, 875, 391 A.2d 117 (1978). The statute provides specific procedures for the interrogation, investigation, suspension, and dismissal (among many other things) of policemen. However, this seemingly all-encompassing statute does not address the situation raised by Hornoff.
The LEOBOR properly considered the positions of both police officers acquitted of crimes and of police officers properly convicted of crimes whose convictions are overturned on appeal. R.I.G.L. § 42-28.6-13 (G) and (H). In both instances, the LEOBOR provides for reinstatement, back pay, and benefits. However, the statute does not consider the instance where an innocent police officer would be convicted of a crime committed by another person. Apparently the drafters of the LEOBOR were neither macabre nor cynical enough to imagine a situation where our system of justice would wrongfully convict a police officer for another man's crimes. But that exact situation occurred in Hornoff's case. Due to this gap the statute simply fails to apply in Hornoff's case.
The LEOBOR is not the only statute that fails to address the singularity of this situation. Although Hornoff has been released from prison, his conviction vacated, and his record expunged — in certain specific instances Hornoff remains a "convicted felon". For example, R.I.G.L. § 12-1.3-4 states that expunged records must be disclosed when a person applies for (1) bar admission, (2) a position as a teacher, and (3) a position as a law enforcement officer. Thus, if Hornoff were to apply for any of those positions his "record" would be disclosed.
Further, in Rhode Island, expungement does not equal acquittal. Hornoff's record was expunged under R.I.G.L. § 12-1.3.3(b)(2):
 That petitioner's rehabilitation has been attained to the court's satisfaction and the expungement of the records of his or her conviction is consistent with the public interest.
Although Hornoff's expungement was well within the public interest, the expungement does not mean that Hornoff has been acquitted. Only acquittal or reversal of a conviction on appeal would grant Hornoff the rights he deserves under the LEOBOR.
Although both statutes seem to be potential sources of redress for Hornoff, it turns out that neither statute was adequately prepared for circumstances such as these. In turn, neither of these statutes fully restores the rights Hornoff deserves as an innocent man.
Since neither of these two statutes allows an innocent man to escape a false conviction, this Court must turn to other avenues in its quest for justice.
 EQUITY
The Rhode Island Superior Court retains equity jurisdiction in all cases that come before it. Although the advent of the Rhode Island Rules of Civil Procedure foreclosed the need for equity courts, the Superior Court retained its equity jurisdiction under R.I.G.L. § 8-2-13 which states:
 The superior court shall, except as otherwise provided by law, have exclusive original jurisdiction of suits and proceedings of an equitable character and of statutory proceedings following the course of equity . . .
Equity jurisdiction applies in this matter because it is the only way to render a just decision. Strict reliance on the aforementioned law would force this court to punish an innocent man for a crime he did not commit; such course of action is not one this Court is prepared to take.
This particular matter demands equity because equity is grounded in the principles of justice and fairness. Equity needs to be utilized here because otherwise, it is likely that an innocent man will continue to suffer for another man's crime. As the ancient maxim states, "equity regards that as done what ought to be done." Alix v. Alix, 497 A.2d 18, 22 (R.I. 1985), quotingCarpenter v. The Providence Washington Insurance Co., 45 U.S. (4 How.) 185, 223-24, 11 L.Ed. 931, 948 (1846); Dobbs, Law of Remedies § 2.3 at 24 n. 24 (1973). And in this case, Hornoff should receive the relief he seeks because equity does not allow innocent men to bear the burden of a wrongful conviction.
Equity applies here not solely in the name of justice. It also applies because the remedies Hornoff seeks are equitable in nature. Back pay, benefits and "reinstatement [are] equitable remedies" Rosario-Torres v. Hernandez-Colon, 889 F.2d 314, 321 (1st Cir. Ct. App. 1989). Here, as in Rosario, the remedy dictates the characterization. Dobbs, Laws of Remedies, § 2.6(3) at 165. Hornoff may have sought back pay, benefits, and reinstatement in the name of a statute (LEOBOR) but he is not limited to relief through that statute only. These equitable remedies can be awarded by a court through equity upon the court's own invocation of its equity powers. Hornoff may not have wittingly requested this Court invoke its equity jurisdiction, but his requested relief raises equity concerns by its very nature.
Hornoff is not the only case where equity has been used in cases involving the expungement of criminal convictions. In U.S.v. Doe, Judge Pettine ordered the expungement of an arrest record along with a conviction even though the statute did not specifically call for expungement of arrest records. Judge Pettine wrote, "[T] he essence of equity is to do complete justice and give effect to the special circumstance of a case."U.S. v. Doe, 496 F. Supp. 650, 655 (U.S. Dist. 1980). Judge Pettine decided that "complete justice" could only be rendered through equity. Similarly, this court feels that "complete justice" can only be gained via equity.
The singularity of the circumstances of this case set it apart from most others. Even in the case cited above, U.S. v. Doe,
which encompasses some of the same issues as Hornoff, it does not involve an innocent person convicted of murder. Nevertheless, the uncommon nature of both cases caused a turn to equity rather than simple reliance on statute. Decisions based on equity call for a case by case analysis. For equity is "more plastic than wooden . . . the hallmark of equity is the ability to assess relevant facts and circumstances and tailor appropriate relief on a case by case basis." Rosario-Torres v. Hernandez-Colon,889 F.2d 314, 321 (1st Cir. Ct. App. 1989). Since few other cases raise any hint of similar relevant facts, Hornoff demands case by case analysis. As stated above, such analysis is the hallmark of equity.
Common sense tells this Court that innocent men should not be punished for something they did not do. Fairness tells this Court that an innocent man should not spend six years in jail for a crime committed by another man. And justice tells this Court that a false conviction should not burden an innocent man after his rightful release. Those tenets of equity: common sense, fairness, and justice ring loudest and most clearly in consideration of this matter.
For three decades this crime has shadowed Hornoff. In the 80's he was a suspect, in the 90's he was a defendant and a convict, and even today although he is a free and innocent man, he still suffers the stigma of his false conviction.
Because Hornoff is an innocent man, he will be seen in that light by this Court. Hornoff has borne the false brand of a convicted felon for long enough — this Court will not allow him to bear it any longer. Therefore, this Court orders the City to grant Hornoff the equitable relief he seeks.
To the extent there may be some disagreement as to the exact amount of money Jeffrey Scott Hornoff is entitled to for back pay and lost benefits as a result of his suspension and termination and the amount, if any, owed to the Rhode Island Family Court pursuant to an Order entered by that Court on April 7, 2003 in the matter of Rhonda J. (Goula) Hornoff vs. Jeffrey S. Hornoff, (K97-1217), this Court will continue the matter for further hearing to Tuesday, January 27, 2004 at 9:30 a.m., or to another date and time mutually agreed upon by counsel for both Hornoff and the City of Warwick Police Department.